JACKSON LEWIS LLP
CARY G. PALMER (SBN 186601)
palmerc@jacksonlewis.com
ERIKA BARBARA PICKLES (SBN 215702)
picklese@jacksonlewis.com
801 K Street, Suite 2300
Sacramento, California 95814
Telephone: (916) 341-0404
Facsimile: (916) 341-0141

Attorneys for Defendant
DAVID'S BRIDAL, INC.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA – FRESNO DIVISION

| | |
|---|---|
| ESTELLA SCHILLER, individually, and on behalf of other members of the general public similarly situated, and as an aggrieved employee pursuant to the Private Attorneys General Act ("PAGA")<br><br>Plaintiff,<br><br>v.<br><br>DAVID'S BRIDAL, INC., a Florida Corporation, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 1:10-CV-00616-AWI-SKO<br><br>[Assigned to the Hon. Anthony W. Ishii]<br><br>**DEFENDANT DAVID'S BRIDAL, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR REMAND**<br><br>Date: June 18, 2010<br>Time: 9:30 a.m.<br>Place: Courtroom 8 |

## I.   INTRODUCTION

Defendant David's Bridal, Inc. ("Defendant") properly removed this action to federal court on the basis of the Class Action Fairness Act of 2005 ("CAFA"). Plaintiff opposes removal by disingenuously claiming Defendant has not demonstrated the amount in controversy exceeds $5 million, while at the same time refusing to stipulate that she seeks less than $5 million. Reeling from two adverse orders against their firm in federal court, Plaintiff's counsel is attempting to manipulate the burden of proof and allegations in the Complaint—and misapplies the law—when the amount in controversy clearly is met.[1]

---

[1] Attached as Exhibits D and E to the Declaration of Erika Pickles ("Pickles Decl.") are two adverse orders from Judge Feess in a substantially similar case. Judge Feess twice denied class certification against Plaintiff's counsel; the orders also highlight questionable tactics attempted by Plaintiff's counsel, illustrative of what is being attempted here.

Plaintiff's Complaint is silent as to the amount in controversy, but alleges maximum penalties under the Private Attorneys General Act ("PAGA"). Defendant provided Plaintiff's counsel with a declaration setting forth the total workweeks (over 18,505) and total aggrieved employees (over 1,114) during the one-year PAGA limitations period, and showing how the PAGA penalties alleged by Plaintiff exceed $25 million without calculating the additional amount in controversy of the seven causes of action, or the alleged attorneys' fees. Plaintiff refused to accept the evidence, and refused to stipulate that Plaintiff was seeking less than $5 million.

Plaintiff's motion misstates Defendant's burden. Defendant need demonstrate only that the amount "put in controversy by the plaintiff's complaint" exceeds the jurisdictional amount. Contrary to Plaintiff's arguments, Defendant need not demonstrate the number of penalties that likely occurred based on Plaintiff's Complaint; rather, Defendant may show a "good-faith estimate" of the amount Plaintiff has put into controversy. In fact, courts have repeatedly held that where the maximum penalties have been alleged, as they have here, the Court will include the maximum penalties as the amount in controversy. Here, even 25 percent of the PAGA penalties alleged in Plaintiff's complaint (without considering any other claims) exceed $5 million. Defendant has clearly shown beyond a preponderance of the evidence that the jurisdictional amount in controversy threshold has been met; nothing further is required.

## II.   STATEMENT OF FACTS

Plaintiff's Complaint is filed as a putative class action on behalf of three proposed subclasses of Defendant's employees for alleged violations of California law that include, among other things, alleged unpaid overtime, missed meal periods, inaccurate wage statements, failure timely to pay wages, failure to pay minimum wages, and failure to provide accurate wage statements. (Complaint, ¶16.) One alleged subclass includes "all non-exempt or hourly paid employees" in California, with the second subclass including "all employees" in California. (Complaint, ¶16.) The Complaint seeks compensatory damages, economic and/or special damages, premium pay and penalties, and attorney's fees, interest and costs of suit for alleged violations occurring during the putative class period. (Complaint, ¶¶107-156.)

In addition to the underlying alleged claims, Plaintiff seeks civil penalties under PAGA on behalf of alleged aggrieved employees. (Complaint, ¶¶5,32-38.) The Complaint specifically seeks the maximum civil penalties under PAGA of $100 "for each aggrieved employee **per pay period** for the initial violation and two hundred dollars ($200) for each aggrieved employee **per pay period** for each subsequent violation, plus costs and attorneys' fees" for each of the first through seventh causes of action. (Complaint, ¶¶48,62,68,75,82,89,97 (emphasis added).) During the one year statute of limitations period of PAGA (Cal. Code Civ. Proc. §340(a)), from January 15, 2009 through April 5, 2010, Defendant employed approximately 1,114 hourly non-exempt employees in California for a total of approximately 18,505 pay periods, and approximately 31 salaried store employees in California for a total of 911 pay periods. (Notice of Removal, ¶10; Declaration of Michelle Pieroni, ¶4 ("Pieroni Declaration") attached as Exhibit B to the Pickles Decl.).) Therefore, assuming a jury were to find for Plaintiff on each cause of action and each prayer for relief as alleged in the Complaint, the amount in controversy Plaintiff seeks for **PAGA penalties alone** breaks down as follows:

For **each of the six** causes of action for hourly employees, Plaintiff seeks over $3,587,300 in penalties for 1,114 hourly employees over 18,505 pay periods at $100 per first alleged violation and $200 per each additional alleged violation. Multiplying this by the six causes of action in the Complaint, where Plaintiff expressly seeks to stack these penalties, exceeds $21,523,800. For the Third Cause of Action against all employees, Plaintiff seeks over $3,766,400 in PAGA penalties for 1145 employees and 19,416 alleged pay periods. Therefore, based on the face of the Complaint and the verified facts as to the number of workweeks and putative class members, a good-faith estimate of the amount Plaintiff seeks in the Complaint is **over $25,290,200** in PAGA penalties alone. Even if the Court were to accept Plaintiff's argument, which Defendant disputes and other courts have rejected, that only 25 percent of this amount should be counted toward the amount in controversy, Plaintiff's Complaint still seeks over $6,322,550 in PAGA penalties.[2]

---

[2] These amounts do not include damages or attorneys' fees for the alleged underlying violations, which Plaintiff also seeks for each of the causes of action. (Complaint, ¶¶48,62,68,75,82,89,97.)

3

On May 5, 2010, Plaintiff's counsel, Sue Kim, left Defendant's counsel a voicemail stating she was calling to meet and confer before filing a motion for remand. (Pickles Decl., ¶3.) On May 7, 2010, Defendant and Plaintiff met and conferred regarding Plaintiff's intent to file the motion for remand. (Pickles Decl., ¶4.) Plaintiff claimed the motion to remand was based on grounds that the amount in controversy did not exceed $5 million under CAFA. (Pickles Decl., ¶4.) Defendant offered to provide a declaration verifying the number of putative class members and number of workweeks for the putative class; Defendant also offered to provide any other evidence Plaintiff may require to confirm the $5 million amount in controversy was met. (Pickles Decl., ¶4, and Exh. A.) Defendant also offered, in the alternative, Defendant would consider voluntary remand if Plaintiff would stipulate the amount she seeks through the Complaint is less than $5 million. (Pickles Decl., ¶5, and Exh. A.) Defendant also offered that, if Plaintiff believed "stacking" of PAGA penalties was improper, Defendant would consider voluntary remand if Plaintiff would stipulate to amend the Complaint to seek only one set of penalties. (Pickles Decl., ¶9, and Exh. A.) Plaintiff refused each of Defendant's offers.

Plaintiff refused to stipulate, or to otherwise admit, that the amount Plaintiff has placed in controversy is less than $5 million. (Pickles Decl., ¶6, and Exh. A.) Plaintiff claimed instead that it is Defendant's burden to show the amount in controversy is over $5 million, and alleged Defendant has failed to meet that burden. (Pickles Decl., ¶6.) Plaintiff claimed her calculations were lower, but refused to disclose upon what her calculations were based. (Pickles Decl., ¶7.) When asked what evidence Defendant could provide to satisfy Plaintiff's alleged burden, Plaintiff did not answer. (Pickles Decl., ¶8.) Plaintiff also claimed Defendant has no evidence demonstrating the propriety of stacking PAGA penalties, but when shown that Plaintiff's Complaint alleged PAGA penalties separately in seven causes for action, Plaintiff still refused to stipulate to seek only one set of penalties or to amend the complaint. (Pickles Decl., ¶9, and Exh. A.)

On May 19, 2010, Defendant provided Plaintiff with a declaration, which was signed under penalty of perjury by Michele Pieroni, Director of Compensation and Labor Relations for Defendant; the declaration confirmed the company data used to demonstrate the amount in

controversy for removal and verified the number of workweeks and employees used in the removal calculation. (Pickles Decl., ¶10, and Exh. B thereto.) Incredibly, on May 24, 2010, Plaintiff rejected the declaration because "it fails to meet the articulated standard of hard, 'summary judgment type' evidence which the authority governing remand dictates." (Pickles Decl., ¶11, and Exh. C thereto.)

### III.  LEGAL ARGUMENT

#### A.  Plaintiff Uses the Wrong Legal Standard

Plaintiff claims, without citing authority, Defendant failed to carry its burden of establishing that the amount in controversy with respect to "each Plaintiff" exceeds $75,000. (Motion for Remand ("Motion"), 1:7-9;5:8-9.) Plaintiff's failure to cite to authority is fatal because Plaintiff relies on the standard for "mass actions" under CAFA (or possibly to diversity jurisdiction), not to "class actions" under CAFA which forms the basis for jurisdiction here.

By express language, Plaintiff's Complaint and motion allege a class action under CAFA. (See, e.g., Complaint, ¶1; Motion, 2:13-15.) For class actions under CAFA, the **total** jurisdictional amount in controversy must exceed, exclusive of interest and costs, $5,000,000. (28 U.S.C. §1332(d)(2).) Under CAFA, "the claims of the individual class members shall be **aggregated** to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." (28 U.S.C. §1332(d)(6) (emphasis added).)

Here, the Court need not examine the $75,000 amount because that standard only applies to mass actions under CAFA (and to diversity jurisdiction amounts in controversy). (28 U.S.C. §1332(d)(11).)

#### B.  The Amount in Controversy Exceeds $5 Million

The Court must determine whether the aggregate "amount in controversy" of Plaintiff's allegations in the Complaint exceed $5 million. (28 U.S.C. §1332(d)(6).) "In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." (Korn v. Polo Ralph Lauren Corp., 536 F.supp.2d 1199, 1205 (E.D.Cal.2008).) "The ultimate inquiry is **what amount is put 'in controversy' by the plaintiff's complaint,** not what a defendant will actually

owe." (Id. (emphasis added).)  To determine what the "amount in controversy" is, courts look to the "face of the complaint" and the prayer for relief for a specific amount of damages. (Saulic v. Symantec Corp., 2007 WL 5074883, at *6 (courts look to face of complaint, but where plaintiff seeks no specific amount of damages, court is forced to look beyond the complaint); Guglielmino v. McKee Foods Corp., 506 F.3d 696, 701 (9th Cir. 2007) (courts look to prayer for relief, and any sums from the allegations which would be payable by defendant are included in determining an amount in controversy calculation).)

Here, the first six causes of action and the prayer for relief seek damages and attorneys' fees for the putative class members for tens of thousands of workweeks over a four year period; the seventh cause of action alone seeks damages and attorneys' fees for over 18,505 workweeks over a one year period. (Complaint, pp. 19-23; Pieroni Decl., ¶4.) Clearly, the amount sought by Plaintiff for her underlying claims for tens of thousands of workweeks for thousands of employees is significant and likely to far exceed the jurisdictional threshold. However, to determine if federal jurisdiction is proper, the Court need not look beyond the easily demonstrable PAGA penalties claimed by Plaintiff.

As shown above, assuming a jury finds for Plaintiff on all Plaintiff's PAGA claims alleged in the Complaint (as the Court must do), the amount "put in controversy" by Plaintiff for PAGA penalties alone **exceeds $25,290,200, more than five times the jurisdictional threshold amount.** (Notice of Removal, ¶10.) Plaintiff refused to stipulate otherwise. (Pickles Decl., ¶6, and Exh. A.)  Plaintiff also refused to stipulate or amend the Complaint to avoid stacking the penalties. (Pickles Decl., ¶9, and Exh. A.) In fact, Plaintiff reserved the right to claim that stacking is proper. (Motion, 7:7-9.) Defendant has met its burden of proof in demonstrating beyond a preponderance of the evidence that Plaintiff has "put in controversy" over $5 million.

### C. Plaintiff Misstates the Legal Standard of Proof for Removal

Plaintiff concedes Defendant's burden is limited to demonstrating by a preponderance of the evidence that the amount in controversy is satisfied. (Motion, 4:26-28.) Plaintiff also concedes Defendant does not have to prove Plaintiff's claim for damages. (Motion 5:28-6:3.) However, Plaintiff mistakenly claims Defendant must demonstrate the number of penalties used

in the calculation. This is a misinterpretation of Defendant's burden. In Saulic, 2007 WL 5074883, at *7, the plaintiff claimed that the court should not presume the maximum civil penalties for each class member, but instead a range of penalties, claiming defendants must prove the amount likely to be awarded. The court flatly rejected this argument, agreeing with defendants that the argument is "inconsistent with plaintiff's prayer for relief appearing in the complaint." (Id.) The court held the amount in controversy is determined by the amount demanded in good faith when the complaint is filed, rather than the sum ultimately found to be due. (Id.) The court noted that plaintiff would not stipulate to demanding less than the maximum penalty. (Id., at *8.) Here, as in Saulic, Plaintiff's Complaint pled for the maximum allowable penalties, and has refused to stipulate the amount in controversy is less than $5 million.

Courts are clear defendants need not prove any precise amount in controversy; a good-faith estimate of the amount in controversy will suffice to establish federal jurisdiction. (Oshana v. Coca-Cola Co., 472 F.3d 506, 511 (7th Cir. 2006) (where "plaintiff, as master of the complaint, does not want to be in federal court and provides little information about the value of her claims…a good-faith estimate of the stakes is acceptable if it is plausible and supported by a preponderance of the evidence").) Based on the language of the complaint, and the number of putative class members and workweeks at issue, over $25,290,200 is a good-faith estimate of the amount Plaintiff has put in controversy for the PAGA penalties alone. Plaintiff had the opportunity, at Defendant's urging, to stipulate that Plaintiff was seeking less than the jurisdictional amount, yet Plaintiff refused to do so. Therefore, a preponderance of the evidence clearly demonstrates the amount in controversy exceeds $5 million.

Plaintiff's motion also misstates the holding in Singer v. State Farm Mutual Automobile Insur. Co., 116 F.3d 373 (9th Cir. 1997). Plaintiff misquotes Singer by stating "defendant must submit 'summary-judgment-type evidence' to establish the actual amount exceeds $75,000." (Motion, p. 5, lns. 3-5.) Singer actually supports Defendant's position. "The plaintiff, after all, creates the controversy and is the master of the claim, and decides how much money to demand." (Singer, 116 F.3d at 376 (citation omitted).) Singer explains that the district court may consider whether it is "facially apparent" from the complaint that the jurisdictional amount is in

controversy. (Id., at 377.) As demonstrated above, it is facially apparent that Plaintiff here is seeking over $5 million. Singer goes on to state that the district court may also go beyond the face of the complaint and consider facts in the removal petition, and the district court in its discretion "may require parties to submit summary-judgment-type evidence." (Id.; see also, Ellenburg v. Spartan Motors Chassis, Inc., 519 F.3d 192, 200 (4th Cir. 2008) (only when jurisdictional allegations are challenged must the proponent of federal jurisdiction demonstrate that removal is proper).) The Pieroni Declaration confirms removal was proper.[3]

### D.  All PAGA Penalties Should Be Calculated In the Amount in Controversy

Plaintiff argues Defendant's calculation of the amount in controversy should not include all of the PAGA penalties, only the 25 percent that would be payable to aggrieved employees. (Pl.'s Mot. To Remand at 7:14-26.) Plaintiff's argument is wrong and irrelevant because even if the Court considered only 25 percent of the PAGA penalties, that amount still exceeds $5 million, even before adding the underlying claims. The amount in controversy would exceed $6,322,550 (25 percent of $25,290,200) in PAGA penalties alone.

Plaintiff's argument is also legally wrong. Plaintiff uses the legal standard for diversity jurisdiction, which is inapplicable to the standard for an amount in controversy for a class action under CAFA. The full amount of the penalties are part of the amount in controversy because, regardless of what aggrieved employees or the LWDA collect, Plaintiff is demanding Defendant pay the full amount, and the full amount is aggregated under CAFA to determine whether the total amount in controversy exceeds $5 million. Anything of value sought in the complaint, exclusive of interest and costs, is included in the calculation for the amount in controversy. (Ridder Bros. v. Blethen, 142 F.2d 395, 399 (9th Cir. 1944) (holding that for purposes of calculating amount in controversy, "[t]he value of the thing sought to be accomplished by the action may relate to either or any party to the action"); Guglielmino, 506 F.3d at 701 (any sums payable by defendant are included in determining the amount in controversy calculation).)

---

[3] The Pieroni declaration is admissible and conclusive. (See, e.g., Cohn v. Petsmart, Inc., 281 F.3d 837, 840, n.1 (9th Cir. 2002) (holding that a district court may treat an opposition brief as an amendment to the notice of removal); Sierminski v. Transouth Fin. Corp., 216 F.3d 945, 949 (11th Cir. 2000) (district court may consider post-removal evidence in determining whether jurisdictional amount is satisfied).)

Courts ruling on a motion to remand routinely consider the entirety of a plaintiff's PAGA claim in determining if the $5 million amount in controversy has been met, not just the 25 percent that goes to aggrieved employees. (Corsino v. Perkins, 2010 WL 317418, *4 (C.D.Cal.) (using 100% of PAGA penalties as a measure and holding that defendants proved beyond preponderance of evidence that alleged PAGA penalties and overtime claims alone, even without considering other claims, exceeded $5 million jurisdictional amount); Lyon v. W.W. Grainger, Inc., 2010 WL 1753194, *3 (N.D. Cal.) (holding, in CAFA class action including PAGA penalties, "[a]ll penalties will, therefore, be included in determining the amount in controversy.").) Courts routinely include the full amount of any kinds of penalties alleged in determining the amount in controversy. (St. Paul Reinsurance Co., Ltd. v. Greenberg, 134 F.3d 1250, 1253 (5th Cir. 1998) (items considered in determining amount in controversy "are, inter alia, penalties, statutory damages, and punitive damages"); Saulic, 2007 WL 5074883, at *7 (full amount of penalties per class member sought in complaint under CAFA used to determine amount in controversy).)

Plaintiff's reliance on Pulera v. TW Constr. Co., Inc., 2008 U.S. Dist. LEXIS 72659 (E.D. Cal. Aug. 19, 2008) is misplaced. Pulera was based on **diversity jurisdiction**, not a class action under CAFA; in Pulera, therefore, each individual plaintiff had to meet the $75,000 threshold. Therefore, the 75% amount recovered by the LWDA could not be used for the plaintiff individually to meet the $75,000 threshold because the LWDA claims and the plaintiff claims are separate and distinct and cannot be aggregated in a diversity action. (Id., at *13.) However, by express statutory language, class actions under CAFA **aggregate** all the claims to determine if the $5 million threshold is met. (28 U.S.C. §1332(d)(6).) Therefore, even under Pulera, the entire 100 percent of the PAGA penalties would be included in the amount in controversy for a class action under CAFA.

E.   **Plaintiff's Refusal to Confirm the Amount in Controversy Supports Removal**

Federal courts may deny a motion to remand based upon a plaintiff's refusal to stipulate or confirm that the amount in controversy falls below the jurisdictional threshold. See, e.g., Jackson v. American Bankers Ins. Co. of Florida, 976 F.Supp. 1450, 1452 (S.D. Ala. 1997) (noting that one court "gave the plaintiff two opportunities to stipulate that she would never seek more than

9

[the jurisdictional amount]," and that "her refusal to accept…resulted in the denial of her motion to remand"); Gabrielle v. Allegro Resorts Hotels, 210 F. Supp. 2d 62, 66 (D.R.I. 2002) (finding that a plaintiff's arguments regarding the amount in controversy are entitled to "little weight…where counsel for [the plaintiff] was unwilling to stipulate or otherwise formally commit that under no circumstances would [plaintiff] seek or accept more than $75,000 for her claim"); Richmond v. Allstate Ins. Co., 897 F. Supp. 447, 451 (S.D. Cal. 1995) (denying remand motion where plaintiffs made "no binding representation that they seek any less than" the jurisdictional amount in controversy threshold); Ansley v. Met. Life Ins. Co., 215, F.R.D. 575, 578 (D. Ariz. 2003) (denying remand after considering the fact that "[p]laintiff refused to agree to not seek more than $75,000 in damages in exchange for [defendant] withdrawing its notice of removal").

Plaintiff here refused to stipulate or to confirm that the amount in controversy falls below the jurisdictional amount. (Pickles Decl., ¶¶6,9, and Exh. A.) In choosing this path, Plaintiff tries to have her cake and eat it too, i.e., she attempts to limit federal jurisdiction while simultaneously trying to preserve her ability to recover a sum in state court in excess of the jurisdictional threshold. Plaintiff's double-speak should be rejected.

## IV.  CONCLUSION

For all the foregoing reasons and authorities, and based on all the evidence and pleadings before the Court, Defendant respectfully requests the Court to deny Plaintiff's motion for remand.

Date: June 4, 2010                                        JACKSON LEWIS LLP


By: /s/ Cary G. Palmer
    CARY G. PALMER
    ERIKA BARBARA PICKLES

Attorneys for Defendant
DAVID'S BRIDAL, INC.

H:\David's Bridal\Schiller 155478\pleadings\Mot to remand\001-pld Oppos P&A to Mtn Remand.doc

# PROOF OF SERVICE

I am employed in the County of Sacramento, State of California. I am over the age of eighteen years and not a party to the within action; my business address is Jackson Lewis LLP, 801 K Street, Suite 2300, Sacramento, California 95814.

On June 4, 2010, I served the within:

**DEFENDANT DAVID'S BRIDAL, INC.'S POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR REMAND**

on the parties in said cause:

☐ by personally delivering a true and correct copy thereof to the person at the address set forth below, in accordance with Code of Civil Procedure section 1011(a).

☒ by placing a true and correct copy thereof enclosed in a sealed envelope with postage thereon fully prepaid for deposit in the United States Post Office mail box, at my business address shown above, following Jackson Lewis LLP's ordinary business practices for the collection and processing of mail, of which I am readily familiar, and addressed as set forth below. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

☐ by depositing a true and correct copy thereof enclosed in a sealed envelope with delivery fees thereon fully prepaid in a box or other facility regularly maintained by Federal Express or delivering to an authorized courier or driver authorized by Federal Express to receive documents, addressed as set forth below.

☐ by transmitting a true and correct copy by facsimile from facsimile number (916) 341-0141 to the person(s) at the facsimile number(s) set forth below, which transmission was confirmed as complete. A copy of the transmission record is attached hereto.

☐ by forwarding a true and correct copy by e-mail from e-mail address _____ to the person(s) at the e-mail address(es) set forth below.

| | |
|---|---|
| Robert E. Byrnes, Esq.<br>Stephen Gamber, Esq.<br>Initiative Legal Group APC<br>1800 Century Park East, 2nd Floor<br>Los Angeles, CA 90067 | Attorneys for Plaintiff<br>Telephone: (310) 556-5637<br>Facsimile:  (310) 861-9051<br>E-mail: RByrnes@InitiativeLegal.com |

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct, and that this declaration was executed on June 4, 2010 at Sacramento, California.

*Elaine Horton*
Elaine Horton