# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA – FRESNO DIVISION

| | |
|---|---|
| ESTELLA SCHILLER, individually, and on behalf of other members of the general public similarly situated, and as an aggrieved employee pursuant to the Private Attorneys General Act ("PAGA"),<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>DAVID'S BRIDAL, INC., a Florida Corporation, and DOES 1 through 10, inclusive,<br><br>　　　　　　　　Defendants.<br>_____/ | CASE NO. 1:10-cv-00616 AWI SKO<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR REMAND**<br><br>(Docket No. 10) |

## I.  BACKGROUND

On January 15, 2010, Plaintiff Estella Schiller filed suit in Stanislaus County Superior Court against her former employer, Defendant David's Bridal Inc., on behalf of herself and others similarly situated. On March 8, 2010, Plaintiff filed a First Amended Complaint ("FAC").[1] On March 9, 2010, Defendant was served with copies of Plaintiff's Summons and the FAC, entitled "First Amended Class Action and PAGA Complaint." Plaintiff's FAC alleges eight (8) causes of action:

　　(1)　**Failure to Pay Overtime Wages** - California Labor Code §§ 510 and 1198

　　(2)　**Failure to Provide Meal Periods or Pay Meal Period Premiums** - California Labor Code §§ 226.7 and 512(a)

---

[1] It appears from Defendant's removal notice that Plaintiff did not serve Defendant with the original complaint.

(3) **Failure to Reimburse Employees for Business Expenses** - California Labor Code §§ 2800 and 2802

(4) **Failure to Pay the Required Minimum Wage** - California Labor Code §§ 1194, 1197, and 1197.1

(5) **Failure to Timely Pay Wages at Termination** - California Labor Code §§ 201 and 202

(6) **Failure to Timely Pay Wages During Employment** - California Labor Code § 204

(7) **Failure to Provide Accurate, Itemized Wage Statements** - California Labor Code § 226(a)

(8) **Unfair Business Practices** - California Business and Professions Code § 17200

Plaintiff also seeks penalties under the Private Attorney General Act of 2004 ("PAGA") for each cause of action one through seven. In general, PAGA is intended to authorize aggrieved employees, acting as private attorneys general, to assess and collect civil penalties for violations of the Labor Code. Under PAGA, Plaintiff may seek penalties in the sum of one hundred dollars ($100) per aggrieved employee, per pay period for an initial Labor Code violation, and two hundred dollars ($200) for each subsequent violation per aggrieved employee, per pay period. Cal. Lab. Code § 2699(f)(2). If an employee successfully recovers an award of civil penalties, PAGA mandates that 75 percent of the recovery be paid to the Labor and Workforce Development Agency ("LWDA"), leaving the remaining 25 percent as recovery for the employee. *Amaral v. Cintas Corp.*, 163 Cal. App. 4th 1157, 1195 (2008) (citing Cal. Labor Code § 2699(i)).

On April 6, 2010, Defendant filed an Answer to the FAC. On April 8, 2010, Defendant filed a "Notice of Removal of Action to Federal Court," asserting jurisdiction exists under the Class Action Fairness Act of 2005. On May 7, 2010, Plaintiff filed a Motion to Remand, asserting that Defendant had failed to carry its burden to show that the amount in controversy meets or exceeds the jurisdictional minimum. It is Plaintiff's motion to remand that is currently pending before the Court.

///

///

## II.  DISCUSSION

**A.      Legal Standard**

Signed into law on February 18, 2005, the Class Action Fairness Act ("CAFA") significantly expanded federal subject matter and removal jurisdiction over class actions that commenced on or after CAFA's effective date.  "CAFA amends, *inter alia*, the federal diversity statute, 28 U.S.C. § 1332, and now vests original jurisdiction for class actions in federal court where there is minimal diversity and the amount in controversy exceeds $5,000,000." *Bush v. Cheaptickets, Inc.*, 425 F.3d 683, 684 (9th Cir. 2005) (citing 28 U.S.C. § 1332(d)).  CAFA makes it easier for litigants to remove class actions to federal district courts.  *See* 28 U.S.C. §1453(b).

Where a complaint does not allege a specific amount in damages, the removing defendant bears the burden of proving, by a preponderance of the evidence, that the amount in controversy exceeds the statutory minimum.  *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997).  In other words, if it is not clear from the face of the complaint that the jurisdictional amount is met, then the defendant has the burden of showing by a preponderance of evidence that the amount in controversy exceeds $5 million.  The preponderance of the evidence standard means that the "defendant must provide evidence establishing that it is more likely than not that the amount in controversy exceeds that amount." *Sanchez v. Monumental Life Ins. Co*., 102 F.3d 398, 404 (9th Cir. 1996) (internal quotations omitted).  This burden is not "daunting," as courts recognize that under this standard, a removing defendant is not obligated to "research, state, and prove the plaintiff's claims for damages." *McCraw v. Lyons*, 863 F.Supp. 430, 434 (W.D. Ky. 1994).

Yet, a court "cannot base [its] jurisdiction on a [d]efendant's speculation and conjecture." *Lowerdermilk v. United States Bank Nat'l Ass'n*., 479 F.3d 994, 1002 (9th Cir. 2007).  Rather, a defendant must set forth the underlying facts supporting its assertion that the amount in controversy exceeds the statutory minimum.  *Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir. 1992).  In addition to the contents of the removal petition, the court considers "summary-judgment-type evidence relevant to the amount in controversy at the time of removal," such as affidavits or declarations.  *Valdez v. Allstate Ins. Co.,* 372 F.3d 1115, 1117 (9th Cir. 2004)

1  (internal quotations omitted); *see Singer*, 116 F.3d at 374 (defense counsel submitted declarations
2  to show that the amount in controversy exceeded $50,000).  A court may also consider
3  supplemental evidence later proffered by the removing defendant, which was not originally
4  included in the removal notice.  *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 n.1 (9th Cir. 2002).

5  In measuring the amount in controversy, a court must assume that the allegations of the
6  complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the
7  complaint.  *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1001
8  (C.D. Cal. 2002).  The ultimate inquiry is what amount is put "in controversy" by the plaintiff's
9  complaint, not what the defendant will actually owe.  *Rippee v. Boston Market Corp.*, 408 F.Supp.
10 2d 982, 986 (S.D. Cal. 2005); *see also Scherer v. Equitable Life Assurance Society of the United
11 States*, 347 F.3d 394, 299 (2d Cir. 2003) (recognizing that the ultimate or provable amount of
12 damages is not what is considered when determining the amount in controversy; rather, it is the
13 amount put in controversy by the plaintiff's complaint).

14 **B.     Analysis**

15     **1.     Plaintiff's Evidentiary Objections are Overruled**

16 In her Motion for Remand, Plaintiff pointed out that Defendant had provided no
17 supporting evidence or declaration to establish the amount it alleged was in controversy in its
18 Notice of Removal.  In its opposition to Plaintiff's Motion for Remand and in an apparent attempt
19 to address Plaintiff's argument in this regard, Defendant filed the declaration of Ms. Pieroni,
20 Defendant's Director of Compensation and Labor Relations, as an exhibit to the declaration of Ms.
21 Erika Pickles, attorney for Defendant.  Procedurally, Plaintiff objected that Ms. Pieroni's
22 declaration should not have been filed as an exhibit to Ms. Pickles declaration, but should have
23 been filed standing alone in support of Defendant's opposition.  Substantively, Plaintiff argued
24 that Ms. Pieroni's declaration was hearsay because she had reviewed business records to formulate
25 her statement, the declaration lacked an adequate foundation to assert the business records
26 exception to the hearsay rule under Fed. R. Evid. 803(6), and the declaration violated the best
27 evidence rule due to the failure to attach a copy of the records that were reviewed to the
28 declaration.

At the hearing on this matter, the Court offered Defendant the opportunity to re-file Ms. Pieroni's declaration, addressing the deficits that Plaintiff raised, including attaching the documents that Ms. Pieroni reviewed to formulate her declaration. *See Cohn*, 281 F.3d at 840 n.1 (court may also consider supplemental evidence later proffered by the removing defendant, which was not originally included in the removal notice) (citing *Willingham v. Morgan*, 395 U.S. 402, 407 n.3 (1969) ("it is proper to treat the removal petition as if it had been amended to include the relevant information contained in the later-filed affidavits").

On July 7, 2010, Defendant submitted Ms. Pieroni's supplemental declaration. The supplemental declaration overcomes Plaintiff's objections. Ms. Pieroni has adequately set forth that she is employed as Defendant's Director of Compensation and Labor Relations and she states that the payroll records she reviewed to formulate her declaration were business records kept in the regular course of Defendant's business. As such, she has adequately laid a foundation for the business records exception to the hearsay rule. *See United States v. Ray*, 930 F.2d 1368, 1370 (9th Cir. 1990) (qualified witness must establish that writing made at or near time of incident recorded and record is kept in regular course of business activity). The records Ms. Pieroni reviewed were also attached to her July 7, 2010, declaration. Further, in a joint statement filed by the parties after the hearing on this matter, the parties agree that Ms. Pieroni's July 7, 2010, declaration adequately addresses Plaintiff's evidentiary concerns. For these reasons, Plaintiff's objections to the Declaration of Ms. Pieroni are OVERRULED.[2]

### 2. Plaintiff's Refusal to Stipulate to The Amount in Controversy Is Not Adequate Evidence to Establish the Amount in Controversy

Defendant asserts that Plaintiff refuses to stipulate to the amount in controversy and that this refusal should be considered in determining the Court's subject matter jurisdiction in this case. Specifically, Defendant states that it has agreed to remain in Stanislaus County Superior Court if Plaintiff will stipulate that the amount in controversy falls below the CAFA jurisdictional

---

[2] The Court notes that while Ms. Pieroni's originally-filed declaration may not have been admissible at trial for all the reasons Plaintiff stated in her Reply, this did not prevent the Court from considering it. *See Hughes v. U.S.*, 953 F.2d 531, 543 (9th Cir. 1992) (affidavits in support of summary judgment motion do not need to be in a form admissible in trial so long as the underlying facts are of a type that would be admissible as evidence at trial).

5

limit. Opp. 9-10; Decl. of Erika Pickles 2:7-12. Plaintiff has declined to stipulate that the amount in controversy is less than $5 million. Defendant asserts that Plaintiff's refusal to stipulate confirms that Plaintiff believes there is more than $5 million in controversy, and this alone is enough to establish the jurisdictional minimum to support subject matter jurisdiction in this Court.

At least two district courts have concluded that a plaintiff's refusal to stipulate to the amount in controversy in the context of a motion to remand is at least a factor that may be considered in determining whether the amount in controversy has been met. *Schudy v. Gordon*, No. 06-00136-CV-W-DW, 2006 WL 859279, at *1 (W.D. Mo. Mar. 28, 2006) (in determining amount in controversy, court found plaintiff's refusal to stipulate "reinforce[d] the Court's amount-in-controversy decision"); *Pendergrass v. Time Ins. Co.*, No. 5:09-cv-00215-R, 2010 WL 989154, at *2 (W.D. Ky. Mar. 12, 2010) (noting plaintiff's refusal to stipulate that amount in controversy does not exceed jurisdictional minimum).

*Pendergrass* and *Schudy* notwithstanding, district courts in this circuit have persuasively rejected the proposition that the amount in controversy can be established by a plaintiff's refusal to stipulate to the amount in controversy. In *Conrad*, the court reasoned that a defect in subject matter jurisdiction cannot be stipulated to or waived; thus, the defendant's attempt to force the plaintiff into a stipulation regarding the potential amount of damages would have no effect in determining the actual amount in controversy at the time of removal. *Conrad Assocs. v. Hartford Accident & Indem. Co.*, 994 F. Supp. 1196, 1199 (N.D. Cal. 1998); *Bassel v. 4Access Communs. Co.*, No. 07cv2346-L(JMA), 2008 WL 2157005, at * 3 (S.D. Cal. 2008). The court in *Conrad* relied on *Valle v. State Farm Mutual Auto. Ins.*, No. C 97-1659 FMS,1997 WL 564047, at *2 (N.D. Cal. 1997), that likewise rejected a plaintiff's failure to stipulate to the amount of damages sought in the complaint as establishing the amount in controversy. In *Valle*, the court pointed out that were the court to find the failure to stipulate dispositive, defendants in every removal dispute "would force the plaintiffs to make such a choice between stipulating against their future remedies and remaining in federal court." *Valle*, 1997 WL 564047 at *2.

Further, the Court has an independent duty to consider its own subject matter jurisdiction. *See United Investors Life Ins. Co. v. Waddell & Reed Inc.*, 360 F.3d 960, 966 (9th Cir. 2004)

(district court's duty to establish subject matter jurisdiction is not contingent upon the parties' arguments); *see also Janakes v. U.S. Postal Serv.*, 768 F.2d 1091, 1095 (9th Cir. 1985) ("parties cannot by stipulation or waiver grant or deny federal subject matter jurisdiction."). If a party's affirmative stipulation cannot establish or deprive the court of subject matter jurisdiction, a *refusal* to stipulate to damages provides even less foundation for the Court to determine the amount in controversy and determine whether subject matter jurisdiction exists.

Finally, the burden is on the defendant, not the plaintiff, to establish by a preponderance of evidence the amount in controversy. *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006). The opponent of federal jurisdiction (typically the plaintiff in the removal context) has no obligation to stipulate to damages or assist the other party in establishing the amount in controversy. If a plaintiff's refusal to stipulate was sufficient to satisfy that burden, a defendant could force the plaintiff to choose between stipulating in a manner prejudicial to his interests (agreeing to a limitation of damages) or litigating in a forum that he did not choose. *Bassel*, 2008 WL 2157005 at * 3; *Valle*, 1997 WL 564047 at *2 ("were the Court to hold the failure to stipulate dispositive, defendants in every removal dispute would force the plaintiffs to make such a choice between stipulating against their future remedies and remaining in federal court.").

Moreover, *Pendergrass* and *Schudy* fail to acknowledge the well-settled case law that a stipulation of the parties cannot establish or deny a court subject matter jurisdiction. *See Janakes*, 768 F.2d at 1095. Therefore, *Pendergrass* and *Shudy* are not persuasive for the proposition that a *refusal* to stipulate is a factor that may inform the Court's determination on subject matter jurisdiction. On numerous occasions, the Northern District of California has specifically and convincingly rejected the argument that a refusal to stipulate to an amount in controversy establishes subject matter jurisdiction or is even a factor that may be properly considered. *Conrad, Valle,* and *Bassel*, *supra*. The Court finds the reasoning of *Conrad, Valle,* and *Bassel, supra,* to be persuasive. As such, the Court finds that Plaintiff's refusal to stipulate to an amount in controversy is not dispositive or even a persuasive factor in establishing the Court's subject matter jurisdiction.

### 3. Defendant Has Carried Its Burden of Showing that it is More Likely than Not That the Amount in Controversy Exceeds $5,000,000

Neither party disputes that the minimal diversity and numerosity requirements of CAFA are met.[3] Rather, the parties' only dispute is whether Defendant has met its burden of establishing, by a preponderance of evidence, that the amount in controversy exceeds the jurisdictional minimum. As the proponent of federal jurisdiction, it is Defendant's duty to establish that it is more likely than not that the amount in controversy exceeds $5,000,000. *Abrego Abrego*, 443 F.3d at 685. Further, in any class action under CAFA, the claims of the individual class members are aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs. 28 U.S.C. § 1332(d)(6).[4]

#### a. Potential PAGA Penalties May be Aggregated or "Stacked"

In her FAC, Plaintiff alleges that Defendant's business practices violate seven (7) separate sections of the California Labor Code ("Labor Code") as set forth in seven (7) separate causes of action. As to each cause of action, Plaintiff prays that civil penalties be assessed under PAGA. FAC ¶¶ 48, 62, 68, 75, 82, 89, 97. In the "Prayer for Relief" section of the FAC, Plaintiff reiterates her request for PAGA penalties as to each separate cause of action. FAC ¶¶ 111, 118, 124, 132, 138, 143, 149.

Plaintiff asserts that even though she has asked that PAGA penalties be assessed for each cause of action (i.e., multiple PAGA penalties assessed for different types of Labor Code violations in a single pay period), it is unknown whether multiple PAGA penalties can actually be assessed multiple times within the same pay period for each separate Labor Code violation.

---

[3] In a footnote on page 2 of Plaintiff's Motion, Plaintiff states that she seeks to remand based on Defendant's failure to meet its evidentiary burden "(as well as upon the applicability of the CAFA local controversy exception.)." Mot. at 2, n.2. However, Plaintiff presents no substantive argument related to a CAFA local controversy exception. The "local controversy" exception provides that a "district court shall decline to exercise jurisdiction" over a class action in which the plaintiff class and at least one defendant meet certain characteristics that essentially make the case a local controversy (i.e., 2/3 of plaintiff class are citizens of state where action filed and at least one defendant is citizen of State in which action was originally filed). 28 U.S.C. § 1332(d)(4)(A)(i). None of the local controversy exceptions would apply here given that Defendant is not a California corporation, but rather a Florida corporation.

[4] In her brief, Plaintiff states that Defendant has the duty to show that each plaintiff's claim exceeds $75,000. This is incorrect in the context of removal under CAFA. 28 U.S.C. § 1332(d)(2).

8

Plaintiff refers to tabulating all the potential PAGA penalties alleged as to each cause of action and aggregating them as "stacking." Plaintiff maintains that while she may request that PAGA penalties be awarded as to each cause of action, Defendant may not "stack" the PAGA penalties for purposes of calculating the amount in controversy. The Court disagrees.

First, Plaintiff cites no authority establishing that PAGA penalties could not be awarded for every cause of action under which they are alleged. Therefore, it is conceivable that Plaintiff could recover PAGA penalties for each separate type of Labor Code violation. *Cf. Simmons v. PCR Technology*, 209 F.Supp. 2d 1029, 1033 (N.D. Cal. 2002) (finding punitive damages available under California Fair Employment Housing Act; thus, punitive damages could be considered for amount in controversy calculation). Second, while not explicitly addressing this issue, at least two other courts have allowed the amount in controversy to be tabulated by aggregating all potential PAGA penalties alleged as to each cause of action – in other words, stacking the penalties. *See Pulera v. F & B, Inc.*, No. 2:08-cv-00275-MCE-DAD, 2008 WL 3863489, at * 2-3 (E.D. Cal. Aug. 19, 2008) (even despite aggregating 25% of all PAGA penalties alleged, court concluded amount in controversy not met); *Smith v. Brinker Intern, Inc.*, No. C 10-0213 VRW, 2010 WL 1838726, at * 2-6 (N.D. Cal. May 5, 2010).[5] Finally, in Plaintiff's FAC she requests that PAGA penalties be awarded for each cause of action one through seven. Thus, Plaintiff has put multiple PAGA penalties in controversy for purposes of the FAC. *Korn v. Polo Ralph Lauren Corp.*, 536 F.Supp. 2d 1199, 1205 (E.D. Cal. 2008 (citing *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002) (amount in controversy is determined by universe of what the plaintiff puts at-issue in the complaint). Plaintiff cannot use PAGA civil penalties as both a sword <u>and</u> a shield by requesting in her FAC that PAGA penalties be awarded for each of seven (7) causes of action, and then arguing that Defendant cannot aggregate PAGA penalties alleged for each cause of action for purposes of

---

[5] The court notes that neither of these cases was removed pursuant to CAFA; thus the courts in both cases tabulated PAGA penalties as to each plaintiff to determine whether the amount in controversy as to each plaintiff met the $75,000 jurisdictional minimum.

calculating the amount in controversy.

For these reasons, the Court concludes that Defendant may aggregate all alleged PAGA penalties asserted as to each cause of action for purposes of establishing the amount in controversy.

### b.  Application of Defendant's PAGA Calculations

Having determined that Defendant may aggregate all alleged PAGA penalties as to each cause of action for the purposes of tabulating the amount in controversy, the Court next turns to Defendant's actual calculations in this regard. In its removal notice, Defendant claims that the amount in controversy in alleged PAGA penalties alone is at least $5 million. First, Defendant asserts that PAGA penalties carry a one-year statute of limitation. Thus, for purposes of calculating any applicable PAGA penalties, Defendant asserts that such penalties must be calculated from one year prior to the date the complaint was filed to the present time. Cal. Code Civ. Proc. § 340. Therefore, the applicable PAGA period for purposes of removal is from January 15, 2009, to April 2010 (when Defendant filed its Notice of Removal). Second, as to the amount of the penalties, Defendant states that PAGA assesses a $100 penalty per aggrieved employee, per pay period for each individual Labor Code violation. Third, Defendant contends that PAGA assesses a $200 penalty per aggrieved employee, per pay period for each <u>subsequent</u> violation of the Labor Code.

Defendant contends that its records show that it employed 1,114 hourly non-exempt store employees in California from January 15, 2009, to April 2010. Those 1,114 employees worked an aggregate total of 18,505 pay periods during that time frame. To calculate the PAGA penalties based on the information Defendant provided, Defendant necessarily assumed that each of the 1,114 worked at least one pay period (1,114 pay periods). Further, if each of those pay periods were shown to contain an initial violation of the Labor Code, a $100 penalty would be assessed per aggrieved employee, per pay period (1,114 x $100 = $111,400) ("$100 violations").

Then, if violations were established in subsequent pay periods, a $200 violation per aggrieved employee, per pay period could be assessed. Assuming every worker experienced an initial violation in the first pay period he or she worked, all violations found in subsequent pay

periods would be subsequent violations and assessed at the $200 level. Therefore, with 17,391 pay periods remaining (18,505 - 1,114 = 17,391), any violation therein would necessarily be a $200 violation (17,391 x $200 = $3,478,200) ("$200 violations").

Adding the $100 violations ($111,400) to the $200 violations ($3,478,200) provides a total amount of $3,589,600 ($111,400 + $3,478,200 = $3,589,600) per cause of action that relates to non-exempt hourly employees. Therefore, Defendant asserts that the amount of PAGA penalties sought under the first, second, fourth, fifth, sixth, and seventh causes of action are approximately $3,589,600 per cause of action for a total of $21,537,600 ($3,589,600 x 6 = $21,537,600).[6]

The Third Cause of Action, failure to pay business expenses of all employees, relates to all employees, exempt and non-exempt. As to that total, Defendant establishes that there were 1,145 employees in both of those categories who worked an aggregate total of 19,416 pay periods (18,505 non-exempt + 911 exempt = 19,416). Using the same assumptions outlined above (that every employee suffered a Labor Code violation every pay period during applicable PAGA period), the PAGA penalties are calculated as ($100 x 1,145 = $114, 500) + ($200 x (19,416 - 1,145 = 18,271) = $3,654,200) for a total of $3,768,700 ($114,500 + $3,654,200) for the Third Cause of Action. Adding the figure applicable to the Third Cause of Action to the other causes of action, potential PAGA penalties for causes of action one through seven amount to $25,306,300 ($3,768,700 + $21,537,600 = $25,306,300).

While Plaintiff did not raise the argument, the Court notes that the above calculations necessarily cannot apply to the Fifth Cause of Action. The Fifth Cause of Action alleges that Defendant failed to pay Plaintiff and class members (who are no longer employed by Defendant) their wages, earned and unpaid, either at the time of discharge, or within seventy-two (72) hours of leaving Defendant's employee. *See* FAC at 14:27-28 - 15:1-2. It is untenable to assume that

---

[6] In its Notice of Removal and its Opposition, Defendant maintained that the amount of PAGA penalties at issue for each cause of action 1-2 and 4-7 was **$3,587,300**. Based upon the evidentiary facts provided by Defendant, the asserted total for causes of action 1-2 and 4-7 is actually **$3,589,600**. Defendant did not explain how it reached its initial total of $3,587,300. Ultimately, this $2,300 discrepancy does not affect the outcome here and both parties agreed that, based upon payroll records provided by Defendant, $3,589,600 is an accurate mathematical calculation. Notably, Plaintiff did not concede that the $3,589,600 per cause of action amount could be aggregated, i.e., that potential PAGA penalties for each cause of action could be added together.

every employee suffered this particular Labor Code violation during every pay period. Such an assumption presumes that every employee was fired or quit every pay period from January 15, 2009, until April 2010. This concept is also contradicted by Defendant's business records that show the number of employment terminations during the PAGA period. Thus, the Court finds Defendant's calculations as to the Fifth Cause of Action to be both speculative and unsubstantiated. The calculations for the Fifth Cause of Action ($3,589,600) will not be considered in reaching the total amount in controversy. Defendant's asserted amount in controversy ($25,306,300) must be reduced by $3,589,600 as this amount is not established by a preponderance of evidence. The total amount in controversy, therefore, is $21,716,700 ($25,306,300 - $3,589,600).

### c. The Amount in Controversy Is Not Affected by the Amount LWDA will Share in PAGA Penalties Assessed Against Defendant.

Although the potential PAGA penalties calculated above amount to $21,716,700, this does not end the analysis. Citing *Pulera*, 2008 WL 3863489, Plaintiff contends that Defendant's amount in controversy calculations are overinflated because Defendant ignores that 75% of all recovered PAGA penalties will be paid to California's LWDA, and Plaintiff and the class will only receive 25% of the penalties assessed. Therefore, Plaintiff argues that only 25% of the PAGA penalties may be considered in determining the amount in controversy. Mot. to Remand at 7:16-20. Defendant avers that anything of value sought in the complaint may be included in the calculation for the amount in controversy; therefore, 100% of PAGA penalties may be included. Opp. at 8:20-21.

Under PAGA, 75% of the civil penalties recovered by aggrieved employees are distributed to the LWDA, while the remaining 25% are distributed to the litigating employees. Cal. Lab. Code § 2699(f)(2). In *Pulera*, the court determined that PAGA penalty amounts recoverable by a plaintiff are separate and distinct from the amounts recoverable by the LWDA for purposes of removal jurisdiction, and amounts payable to the LWDA may not be aggregated in calculating the amount in controversy. 2008 WL 3863489 at *4. The court reasoned that the plaintiff and the LWDA are like separate plaintiffs. *Id.*; s*ee generally Arias v. Super. Ct.*, 46 Cal. 4th 969, 986

(2009) (plaintiff brings claims pursuant to PAGA as "the proxy or agent of the state's labor law enforcement agencies."). Therefore, the court concluded that only 25% of the PAGA penalties at issue, the amount that could actually be awarded to plaintiff, could be used to calculate the amount in controversy.

Plaintiff's reliance on *Pulera* is misplaced. First, *Pulera* is inapposite because that case was not a class action and it was not removed pursuant to CAFA.[7] Under CAFA, the "claims of the individual class members *shall be* aggregated" to determine whether the matter in controversy exceeds $5,000,000. 28 U.S.C. § 1332(d)(6) (emphasis added).[8] Even assuming, *arguendo*, that *Pulera* applies in the context of CAFA and the LWDA is construed to be analogous to a separate plaintiff for purposes of awarding PAGA penalties, CAFA has mandated that each class member's claims should be aggregated when determining the amount in controversy. 28 U.S.C. § 1332(d)(6).

Moreover, the question is not how much Plaintiff or the class will ultimately recover; the amount in controversy is calculated based upon the amount put into controversy by the complaint, regardless of how the recovery is divided. *See Korn v. Polo Ralph Lauren Corp.*, 536 F.Supp.2d 1199, 1205 (E.D. Cal. 2008) (citing *Rippee,* 408 F.Supp. 2d at 986); *Dean Witter*, 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002) (ultimate inquiry is what amount is put in controversy by the plaintiff's complaint, not what a defendant will actually owe). Thus, it makes little difference whether the LWDA shares in the recovery – Plaintiff, by alleging PAGA penalties, has put 100% of the PAGA penalties in controversy.

Further, in considering PAGA and the amount in controversy for purposes of removal under CAFA, at least two courts appear to have allowed 100% of potential PAGA penalties to be tabulated, rather than just the 25% that will ultimately be payable to the aggrieved employees,

---

[7] The court in *Smith, supra* at 9, likewise tabulated the amount in controversy by aggregating only 25% of the potential PAGA penalties. 2010 WL 1838726, at * 2-6. However, the defendants in *Smith* did not remove pursuant to CAFA; instead, they relied on the diversity provision of 28 U.S.C. § 1332(a).

[8] In diversity actions removed under 28 U.S.C. § 1332(a) (as opposed to actions removed under 28 U.S.C. § 1332(d)), the claims of multiple plaintiffs cannot be aggregated for purposes of calculating the amount in controversy; each plaintiff must place an amount in controversy that exceeds $75,000.

although neither court explicitly addressed the issue. *Corsino v. Perkins*, No CV 09-09031 MMM (CWx), 2010 WL 317418, at *4 (C.D. Cal. Jan. 19, 2010) ; *Lyon v. W.W. Grainger Inc.*, No. C 10-00884 WHA, 2010 WL 1753194, at *3 (N.D. Cal. April 29, 2010).

Finally, even if this Court applied the rationale of the decision in *Pulera* in the CAFA context, 25% of the PAGA penalties at issue here still exceeds the $5 million amount in controversy requirement, i.e., 25% of $21,716,700 = $5,429,175. Thus, Plaintiff's argument in this regard is largely irrelevant.

### III.  CONCLUSION

The Court finds that Defendant has established, by a preponderance of the evidence, that the amount in controversy exceeds $21,716,700. As Plaintiff requests PAGA penalties be assessed as to each cause of action in the FAC, Defendant may aggregate all potential PAGA penalties as to each cause of action to establish the amount in controversy. Further, even if the amount in controversy is reduced by 75% to account for the fact that LWDA will recover 75% of the PAGA penalties awarded, the amount in controversy still exceeds the $5,000,000 in potential PAGA penalties alone. Moreover, none of Defendant's calculations include any damages that Plaintiff and the class are seeking as a result of unpaid or insufficient wages, unpaid meal breaks, and unpaid expenses which would necessarily further increase the amount in controversy. For these reasons, the Court finds that the amount in controversy exceeds $5,000,000.

Accordingly, IT IS HEREBY ORDERED THAT Plaintiff's Motion to Remand is DENIED.

IT IS SO ORDERED.

**Dated:   July 14, 2010**              /s/ Sheila K. Oberto
                                        UNITED STATES MAGISTRATE JUDGE