1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9
10
11
12
13
14
15
16
17
18
19
20

| | |
|---|---|
| ESTELLA SCHILLER, individually, and on behalf of other members of the general public similarly situated, and as an aggrieved employee pursuant to the Private Attorneys General Act,<br><br>    Plaintiff,<br><br> v.<br><br>DAVID'S BRIDAL, INC., a Florida Corporation; and DOES 1 through 10, inclusive,<br><br>    Defendants.<br>_____/ | CASE NO. 1:10-cv-00616-AWI-SKO<br><br>**FINDINGS AND RECOMMENDATIONS THAT:**<br><br>**THE MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT BE GRANTED**<br><br>(Doc. No. 48)<br><br>**THE MOTION FOR ATTORNEYS' FEES BE GRANTED**<br><br>(Doc. No. 49)<br><br>**OBJECTIONS DUE: 14 DAYS** |

21

### I. INTRODUCTION

22    On March 9, 2012, Plaintiff Estella Schiller filed motions for final approval of a class action

23 settlement, for an award of attorneys' fees, and for an enhancement award for Plaintiff as class

24 representative.[1] (Docs. 48, 49.) No opposition to the motions was filed, and no objection by a Class

25 Member was submitted. The matter was heard on May 16, 2012; Arthur Meneses, Esq., of Initiative

26 Legal Group APC appeared on behalf of Plaintiff, and Cary Palmer, Esq., of Jackson Lewis LLP

27
28

---

[1] Although the electronic docket indicates that Plaintiff filed a "Motion for Judgment," the caption of the motion filed is a "Motion for Final Approval of Class Action Settlement." (Doc. 48.)

appeared on behalf of Defendant David's Bridal, Inc. ("David's Bridal" or "Defendant"). No Class Member appeared at the hearing. For the reasons set forth below, the Court RECOMMENDS that Plaintiff's motions for (1) final approval of the class action settlement, (2) an award of attorneys' fees, and (3) an enhancement award to Plaintiff as class representative be GRANTED.

## II.   FACTUAL BACKGROUND

This case was filed on January 15, 2010 (Doc. 1, Exh. A, p. 3), in Stanislaus County Superior Court and was removed by Defendant to federal court on April 8, 2010. (Doc. 1.) The complaint stated putative class wage-and-hour claims alleging that Defendant failed to (1) pay overtime wages; (2) provide meal periods and pay meal period premiums; (3) reimburse for necessary business-related expenses and costs; (4) pay minimum wages; (5) timely pay wages upon termination; (6) timely pay wages during employment; (7) provide accurate and itemized wage statements; and (8) comply with the California Business & Professions Code §§ 17200 *et seq.* (Doc. 1, Exh. A; Doc. 37.)[2] The complaint also sought penalties under the California Private Attorneys General Act of 2004 ("PAGA"). Plaintiff unsuccessfully challenged Defendant's removal to federal court. (Doc. 23.) Discovery commenced in September 2010. (*See* Doc. 31.) A Second Amended Complaint alleging the same claims was filed on June 29, 2011. (Doc. 37.)

On May 4, 2011, the parties mediated their dispute with David Rotman, Esq., and after approximately 10 hours of negotiation, the parties reached a settlement of Plaintiff's claims. (Williams Decl., Doc. 39-1, ¶ 8.) The parties memorialized the terms of their proposed settlement in a "Joint Stipulation of Settlement and Release Between Plaintiff and Defendant" ("Settlement Agreement") (Doc. 39-1, Exh. 1), and on October 7, 2011, filed a request for preliminary approval of the class settlement. (Doc. 39.) On November 9, 2011, the Court granted preliminary approval for the settlement, authorized the notice process, and scheduled a hearing to consider final approval of the settlement. (Doc. 46.) On March 9, 2012, Plaintiff filed a Motion for Final Approval of Class Action Settlement ("Motion for Final Approval"), a motion for attorneys' fees, and a request for an

---

[2] Plaintiff filed the original compliant on January 15, 2010, Defendant was served with a First Amended Complaint on March 9, 2010 (*See* Doc. 1, ¶ 13), and a Second Amended Complaint was filed with this Court on June 29, 2011 (Doc. 37).

1    enhancement award.  (Docs.  48, 49.)  Defendant filed a statement of non-opposition to Plaintiff's

2    motions. (Doc. 54.)  On April 9, 2012, the Court issued an order for supplemental briefing and reset

3    the hearing on Plaintiff's motions to May 16, 2012.  (Doc. 55.)  A hearing was held on May 16, 2012,

4    and Plaintiff's motions were submitted for decision.

5                                **III.    THE PARTIES' SETTLEMENT**

6             On October 7, 2011, the parties filed a Notice of Settlement, indicating that they had

7    negotiated a resolution of their dispute.  (Doc. 39.)  The terms of the parties' Settlement Agreement

8    is summarized below.

9    **A.    The Composition of the Settlement Classes**

10            The Settlement Agreement provides for the certification, for settlement purposes only, of two

11   classes comprised of (1) all salaried store employees of David's Bridal in California between January

12   1, 2007, and November 9, 2011; and (2) all hourly store employees of David's Bridal in California

13   between January 1, 2007, and November 9, 2011 (the "Settlement Classes").  (Doc. 39-1, Exh. A,

14   ¶ 5.)  The parties agreed that the Settlement Classes would not include any person who previously

15   settled or released any of the claims covered by the Settlement Agreement, or any person who

16   previously was paid or received awards through civil or administrative actions for the claims covered

17   by the Settlement Agreement.  (Doc. 39-1, Exh. 1, ¶ 5.)

18   **B.    The Material Terms of the Settlement Agreement**

19            Plaintiff and Defendant have agreed to settle the underlying class claims in exchange for a

20   "Maximum Settlement Amount," which totals $518,245.00.[3]  The Maximum Settlement Amount

21   includes:

22        (1)    A payment of 33 1/3 percent of the Maximum Settlement Amount for attorneys' fees

23               and up to $25,000 in costs to be paid to Class Counsel, (Doc. 39-1, Exh. 1, ¶ 16);

24   ────────────────

25            [3] Plaintiff's Motion for Final Class Settlement Approval indicates that Class Counsel originally negotiated a
     Maximum Settlement Amount of $500,000.  According to Plaintiff, to ensure that the Maximum Settlement Amount
26   remained fair and adequate consideration, Class Counsel obtained a guarantee from Defendant that if, after preliminary
     approval, the Class size or total number of work weeks exceeded the original estimates by more than 10 percent, the
27   Maximum Settlement Amounts would be increased proportionally.  After preliminary approval, the size of the Classes
     and the total work weeks exceeded the original estimates by more than 10 percent and the Maximum Settlement Amount
28   was increased to $518,245.00 to account for this.  (Doc. 48, 9:13, n.2.)  At the May 16, 2012, hearing, counsel for both
     parties confirmed the Maximum Settlement Amount is $518, 245.00.

1   (2)   A payment of $5,000 to Plaintiff as the class representative, (Doc. 39-1, Exh. 1, ¶
2          14(c)(v));

3   (3)   A payment of $7,500 to the California Labor and Workforce Development Agency
4          for payment of civil penalties, (Doc. 39-1, Exh. 1, ¶ 14(c)); and

5   (4)   The costs of administration of settlement to Simpluris, Inc., the settlement
6          administrator, up to $30,000, (Doc. 39, 15:18);[4]

7   The remainder of the settlement amount, after deduction of the above-noted payments,
8   constitutes the "Net Settlement Amount" and will be used to pay the Class Members.  (Doc. 39-1,
9   Exh. 1, ¶ 14(c).)  After deductions, there will be approximately $286,078.00 remaining as the Net
10  Settlement which will be distributed as follows:

11  (1)   Class Members who submit valid and timely claim forms are entitled to payment
12         from the Net Settlement Amount, (Doc. 39-1, Exh. 1, ¶ 14(c));

13  (2)   No matter how many Class Members submit valid claim forms, at least 55% of the
14         Net Settlement Amount will be paid to Participating Class Members, (Doc. 39-1,
15         Exh. 1, ¶ 14(c));

16  (3)   If less than 55% of the Net Settlement is claimed, the difference between 55% of the
17         Net Settlement Amount and the Net Settlement Amount claimed will be distributed
18         to the Participating Class Members in proportion to their recovery under the
19         Settlement (Doc. 39-1, Exh. 1, ¶ 13); and

20  (4)   Any Net Settlement Amount in excess of 55% that is not claimed by Participating
21         Class Members will be retained by Defendant (Doc. 39-1, Exh. 1, ¶ 14(c)).

22  **C.   The Scope of the Release in the Settlement Agreement**

23  The parties' Settlement Agreement sets forth the following release by the Class Members:

24  21.   Upon final approval by the Court of this Stipulation of Settlement, and except
25  as to such rights or claims as may be created by this Stipulation of Settlement, the
    Hourly Associate Class and the Store Manager Class, and each member of those
25  Classes who has not submitted a valid Request for Exclusion, fully releases and
26  discharges Defendant, its present and former parent companies, subsidiaries, related
    or affiliated companies, shareholders, officers, directors, employees, agents,

27

28  _____
    [4] An supplemental declaration submitted by a case manager of Simpluris, Inc. indicates that the total cost for
    administering the settlement was $28,000.  (Bui Supp. Decl., Doc. 57, ¶ 11.)

attorneys, insurers, successors and assigns, and any individual or entity which could be jointly liable with Defendant, from any and all claims, debts, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, damages, action or causes of action under any state, federal or local law, arising out [of ] the allegations made in the Action and that reasonably arise out of the facts alleged in the Action.

(Doc. 39-1, Exh. 1, ¶ 21.)

### 1. Claims Released by the Hourly Associate Class

a. The claims to be released by the Hourly Associate Class include all claims under state, federal, and local law arising out of the allegations made in the Lawsuit and that reasonably arise out of the facts alleged in the Lawsuit as to the Hourly Associate Class, including claims for alleged unpaid wages, unpaid overtime wages, unpaid minimum wages, off-the-clock work regular rate of pay, unreimbursed business expenses, failure to provide meal periods or pay meal period premiums, failure to provide rest periods or pay rest period premium payments, failure to timely pay wages during employment, failure to timely pay wages at separation, failure to provide accurate and itemized wage statements, failure to maintain payroll records as required by law, additional 401(k) benefits and/or deferred compensation benefits and/or matching benefits for payments received under the Settlement, unfair competition, unfair business practices, unlawful business practices, fraudulent business practices, injunctive relief, penalties, interest, fees, costs, claims for restitution and other equitable relief, liquidated damages, and any other claims and allegations made in the Lawsuit and that arise out of the facts alleged in the Lawsuit, from January 1, 2007[,] up to and including the date of this Final Order, arising from employment by Defendant within California ("Hourly Associate Released Claims"). The Released Claims do not include workers' compensation claims.  In addition, as of the date of the final approval of the Settlement, the Class Representative and the Settlement Class and each member of the Class who has not submitted a valid Request for Exclusion will be forever [] barred and enjoined from instituting or accepting damages or obtaining relief against Defendant for any acts or omissions occurring during the period from January 1, 2007[,] up to and including the date of entry of the final approval order, relating to the Released Claims.

(Doc. 39-1, Exh. 1, ¶ 21(a).)

### 2. Claims to be Released by the Store Manager Class

b. The claims to be released by the Store Manager Class include all claims under state, federal, and local law arising out of the allegations made in the Lawsuit and that reasonably arise out of the facts alleged in the Lawsuit as to the Store Manager Class, including claims for alleged unreimbursed business expenses, unfair competition, unfair business practices, unlawful business practices, fraudulent business practices, injunctive relief, penalties, interest, fees, costs, claims for restitution and other equitable relief, liquidated damages, and any other claims and allegations made in the Lawsuit and that arise out of the facts alleged in the Lawsuit from January 1, 2007[,] up to and including the date of this Final Order, arising from employment by Defendant within California ("Store Manager Released Claims"). The Released Claims do not include workers' compensation claims.  In addition, as of the date of the final approval of the Settlement, the Class Representative and the Settlement Class and each member of the Class who has not submitted a valid Request for Exclusion will be forever [] barred and enjoined from instituting or accepting damages or obtaining relief against Defendant for any acts or omissions

occurring during the period from January 1, 2007[,] up to and including the date of entry of the final approval order, relating to the Released Claims.

(Settlement Agreement, Doc. 39-1, Exh. 1, ¶ 21(b).)

**D.    Notice to the Class Members**

The procedures for giving notice to the Class Members, as set forth in the parties' Settlement Agreement (*see* Doc. 39-1, Exh. 1, ¶ 18) and ordered in the Court's Preliminary Approval Order (Doc. 46), have been carried out by the Settlement Administrator, Simpluris, Inc. (Bui Supp. Decl., Doc. 57, ¶ 2.)[5]  On November 10, 2011, Simpluris received the Class Notice prepared jointly by Class Counsel and counsel for Defendant and approved by the Court.  (Bui Decl., Doc. 52, ¶ 4.)[5] The Class Notice summarized the Settlement Agreement's principal terms, provided Class Members with an estimate of how much they would be paid if the Settlement Agreement received final approval, and advised Class Members regarding how to submit claims for payment, opt out of the Settlement, or object to the Settlement.  (Bui Supp. Decl., Doc. 57, Exh. B.)

Counsel for Defendant subsequently provided Simpluris with a list ("Class List") of all Class Members, their mailing addresses, and other information necessary to calculate estimated settlement payments.  (Bui Decl., Doc. 52, ¶ 4.)  The mailing addresses contained in the Class List were processed and updated using the National Change of Address Database maintained by the U.S. Postal Service. (Bui Decl., Doc. 52, ¶ 5.) On December 23, 2011, a Notice Packet, containing a claim form and the approved Class Notice (*see* Bui Supp. Decl., Doc. 57, Exhs. A-B), was mailed to 3,326 Class Members via First-Class U.S. mail.  (Bui Supp. Decl., Doc. 57, ¶ 4.)  A toll-free telephone number was included in the Class Notice for the purposes of allowing the Class Members to call Simpluris for inquiries regarding the Settlement.  (Bui Decl., Doc. 52, ¶ 3.)

On January 18, 2012, an additional person was added to the Settlement Class and a Notice Packet was mailed to this individual.  (Bui Supp. Decl., Doc. 57, ¶ 6.)  This person was a former employee of Defendant, and contacted Simpluris to inquire about the Settlement Agreement.  (Bui

---

[5] Michael Bui, a case manager for Simpluris, Inc., filed a supplemental declaration in support of Plaintiff's Motion for Final Approval on April 18, 2012, to clarify certain typographical errors contained in his original March 9, 2012, declaration.  (Doc. 57.)

[5] On November 9, 2011, the Court appointed Initiative Legal Group APC "Class Counsel."  (Doc. 46.)

6

Supp. Decl., Doc. 57, ¶ 6.)  This individual was employed by Defendant during the period covered by the settlement, but was not named in the Class List provided by Defendant.  (Bui Supp. Decl., Doc. 57, ¶ 6.)  Defendant's counsel was able to confirm that this individual was a member of the Settlement Class, thus bringing the total number of Class Members to 3,327.  (Bui Supp. Decl., Doc. 57, ¶ 6.)

A total of 699 Class Notice and Claim Forms ("Notice Packets") were returned by the post office.  (Bui Decl., Doc. 52, ¶ 8.)  For those individuals without a forwarding address, Simpluris attempted to locate their current mailing address using Accurint, a research tool owned by Lexis-Nexis.  (Bui Decl., Doc. 52, ¶ 8.)  In total, 621 Notice Packets were re-mailed to either a new address, a forwarding address provided by the U.S. Postal Service, or pursuant to the individual's request.  (Bui Decl., Doc. 52, ¶ 8.)  Ultimately, 143 Notice Packets remain undeliverable because Simpluris was unable to find a current mailing address.  (Bui Decl., Doc. 52, ¶ 8.)

As of April 18, 2012, Simpluris has received a total of 779 completed Claim Forms from Class Members.  Of the 779 claim forms submitted, 19 were untimely and 7 were deficient.  (Bui Supp. Decl., Doc. 57, ¶ 7.)  The 779 claims received from participating Class Members represent 23.41 percent of the entire Settlement Class.  (Bui Supp. Decl., Doc. 57, ¶ 7.)  Participating Class Members have claimed approximately 41.02 percent of the Net Settlement Amount, or approximately $114,879.50.  (Bui Supp. Decl., Doc. 57, ¶ 7.)  As April 18, 2012, there were five (5) requests for exclusion, which represents 0.15 percent of the Settlement Classes, and no Class Member has submitted an objection to the Settlement Agreement.  (Bui Supp. Decl., Doc. 57, ¶¶ 9-10.)[6]

## IV.  DISCUSSION

**A.      Final Approval of the Class-Action Settlement Should be Granted**

**1.      The Rule 23(a) Class-Certification Requirements Are Satisfied**

Federal Rule of Civil Procedure 23(e) requires court approval of class action settlements. "[I]n the context of a case in which the parties reach a settlement agreement prior to class

---

[6] At the May 16, 2012, hearing, the parties confirmed that this information remained unchanged as of the date of the hearing.

certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). In confirming the propriety of class certification, courts assess the following prerequisites: "(1) numerosity of plaintiffs; (2) common questions of law or fact predominate; (3) the named plaintiff's claims and defenses are typical; and (4) the named plaintiff can adequately protect the interests of the class." *Hanlon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citing Fed. R. Civ. P. 23(a)).

### a.   Numerosity

Numerosity requires that the class be so numerous that the joinder of individual class members would be impracticable. Fed. R. Civ. P. 23(a)(1). Across the two Settlement Classes, 3,327 California Class members were ultimately identified. The number of Class Members in this case indicates that the numerosity factor has been satisfied. *See, e.g., Jordan v. L.A. Cnty.*, 669 F.2d 1311, 1319 (9th Cir. 1982) (indicating that class sizes of 39, 64, and 74 are sufficient to satisfy the numerosity requirement), *vacated on other grounds*, 459 U.S. 810 (1982).

### b.   Commonality

Rule 23(a) also requires there be "questions of law or fact common to the class." The Rule does not require that all questions of law or fact be common to every single member of the class. To satisfy the commonality requirement, Plaintiff need only point to a single issue common to the class. *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1177 (9th Cir. 2007). Commonality exists when there is either a common legal issue stemming from divergent factual predicates or a common nucleus of facts resulting in divergent legal theories. *Hanlon v. Chrysler Corp.* ("*Chrysler Corp.*"), 150 F.3d 1011, 1019 (9th Cir. 1998). In other words, commonality is generally satisfied where, as in this case, "the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504-05 (2005). Differences in the ways in which these practices affect individual members of the class do not undermine the finding of commonality. *Id*., at 868 (finding commonality requirement satisfied despite individual class members having different disabilities, since all suffered similar harm as a result of defendant's actions).

Here, the parties have agreed for purposes of settlement only that the following questions of law and fact are common to the classes:

> (1)     Whether Defendant complied with applicable laws affecting Plaintiff and the Settlement Classes regarding hours worked, unpaid wages, overtime wages, minimum wages, meal and rest periods, record-keeping violations, pay stubs, wage statements and methods of payment, under the California Labor Code and Wage Orders of the California Industrial Welfare Commission;
>
> (2)     Whether Defendant engaged in unfair, unlawful or fraudulent business practices affecting Plaintiff and the Settlement Classes in violation of California Business and Professions Code sections 17200-17208; and
>
> (3)     Whether Plaintiff and the Settlement Classes are entitled to injunctive or declaratory relief.

(Doc. 39-1, Exh. 1, ¶ 6(b)(i)-(iii).)  These common questions of law or fact are sufficient to satisfy the commonality requirement.

### c.     Typicality

Typicality exists when "the claims or defenses of the representative are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality . . . is said . . . to be satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong*, 275 F.3d at 868.  Under the rule's "permissive standards," representative claims are typical if they are "reasonably co-extensive with those of absent class members; they need to be substantially identical." *Chrysler Corp.*, 150 F.3d at 1020.  Plaintiff's claims are "co-extensive" with the other Class Members, as Plaintiff and the absent Class Members were all Defendant's employees who were paid under the same pay practices and worked under the same company-wide employment policies.  The typicality requirement is satisfied.

### d.     Adequacy of Representation

The final Rule 23(a) prerequisite, adequacy of representation, is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The satisfaction of constitutional due process concerns requires that absent class members be afforded adequate representation prior to an entry of judgment, which binds them. *Chrysler Corp.*, 150 F.3d at 1020. Determining the adequacy of representation requires consideration of two

questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.*

The adequacy-of-representation requirement is met here because Plaintiff has the same interests as the absent Class Members, e.g., obtaining payment for wages unlawfully withheld and reimbursement of business expenses. Further, there is no apparent conflict of interest between the named Plaintiff's claims and those of the other Class Members, particularly because Plaintiff has no separate and individual claims apart from the Classes.

Moreover, here there are no allocation dilemmas among the Settlement Classes as in *Amchen Products, Inc. v. Windosr* ("*Amchen*"), 512 U.S. 591 (1997). In *Amchen*, the settlement agreement eliminated all present and future claims against asbestos manufacturers, and the class counsel was attempting to represent both groups of plaintiffs, i.e., those who had present claims and those who had future claims. The conflict between the two groups of plaintiffs was that "the present plaintiffs had a clear interest in a settlement that maximized current funds, while future plaintiffs had a strong interest in preserving funds for their future needs and protecting the total fund against inflation." *Chrysler Corp.*, 150 F.3d at 1020-21 (discussing *Amchen*, 512 U.S. 591 (1997)). This case does not involve sub-classes or classes with diverging interests with respect to allocation of the settlement funds in the same manner as *Amchen*. The Court does not perceive any conflicts of interest between Plaintiff and Class Counsel and other Class Members.

In considering the adequacy requirement, the Court also evaluates whether Plaintiff and Class Counsel will pursue the Classes' claims with vigor. The Ninth Circuit has held that, "[a]lthough there are no fixed standards by which 'vigor' can be assayed, considerations include competency of counsel and, in the context of a settlement-only class, an assessment of the rationale for not pursuing further litigation." *Chrysler Corp.*, 150 F.3d at 1021. There is no challenge to the competency of the Class Counsel, and the Court finds that Plaintiff is represented by experienced and competent counsel who have successfully certified 21 class actions through contested motions. (Meneses Decl., Doc. 50, ¶ 2.) Further, this is not a case where Class Counsel will receive a disproportionate

distribution of the settlement or where the Class Members will receive no monetary distribution, but Class Counsel will be rewarded amply.  *Chrysler Corp.*, 150 F.3d at 1021.

The rationale to settle this case was supported, in part, by the pendency of *Brinker Restaurant Corp. v. Superior Court*, 165 Cal. App. 4th 25 (2008), *aff'd in part,* 53 Cal. 4th 1004 (2012) before the California Supreme Court at the time the matter was settled.  California law, as it related to certain of the Classes' claims, was in potential flux, and settlement, rather than continued litigation, was potentially more beneficial to the Class Members.   In other words, it appears that the settlement was arrived at for strategic reasons that benefitted the Classes, rather than Class Counsel's inability or unwillingness to pursue further litigation.  *See Chrysler Corp.,* 150 F.3d at 1021 (class counsel inadequate by definition where counsel demonstrates an inability or unwillingness to try the case). In sum, the Court finds that the adequacy factor is satisfied.

### e.    Conclusion

As initially determined in the Court's preliminary approval order and as set forth above, the Rule 23(a) requirements for class certification have been satisfied.

### 2.    Rule 23(b)(3) Requirements

In addition to meeting the requirements of Rule 23(a), to be certified a class must also meet at least one of the requirements of Rule 23(b).  Plaintiff asserts that class resolution is superior to other available methods for the fair and efficient adjudication of the controversy and the requirements of Rule 23(b) are met.

Pursuant to Rule 23(b)(3), a class action may be maintained if:

> (3)    the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods of fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include:
>
> (A)    the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B)    the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D)    the likely difficulties in managing a class action.

Certification under Rule 23(b)(3) is appropriate whenever the interests of the parties can be served best by settling their differences in a single action. Courts refer to the requirements of Rule 23(b)(3) as its "predominance" and "superiority" requirements. *Amchen*, 521 U.S. at 615.

### a.    Predominance

As the Rule 23(a)(3) analysis already considers the issue of commonality, the focus of the Rule 23(b)(3) predominance inquiry is on the balance between individual and common issues. *Hanlon*, 150 F. 3d at 1022.  In other words, "[t]he Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchen*, 521 U.S. at 623. The "main concern in the predominance inquiry . . . [is] the balance between individual and common issues." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009).

The parties' Settlement Agreement sufficiently demonstrates that "[a] common nucleus of facts and potential legal remedies dominates this litigation." *Chrysler Corp.*, 150 F.3d at 1022.  If individual Class Members were to sue individually, members of the same proposed settlement class would bring essentially the same claims against Defendant.   The central issues raised by the complaint concern policies and practices of Defendant which applies broadly to all the employees in each of the two proposed settlement classes.  Similar to *Wright v. Linkus Enterp., Inc.*, 259 F.R.D. 468, (E.D. Cal. 2009), this case derives from alleged policies that required Class Members to work, for example, without compensation, meal and rest periods, and/or reimbursement for expenses.  The alleged company-wide and uniform employment policies comprise a common nucleus of facts for employees in each group of salaried and hourly store employees.  *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 399 (C.D. Cal. 2008) (class certification is usually appropriate where "liability turns on an employer's uniform policy that is uniformly implemented, since in that situation predominance is easily established"); *see also Perez v. Safety-Kleen Sys., Inc.*, 253 F.R.D. 508, 520 (N.D. Cal. 2008) (common issues predominate meal break claims and claims for failure to provide itemized wage statements because these were class-wide policies, and litigation of these claims involve class-wide proof rather than individualized inquiry).  Moreover, the alleged violations of state law entitle the Class Members to the same legal remedies.  Thus, despite the minor factual differences among

Class Members in each of the two proposed settlement classes – such as the number of hours worked – common issues predominate.

### b.   Superiority

In addition to the predominance requirement, Rule 23(b)(3) provides a non-exhaustive list of matters relevant to the Court's determination that class action treatment is superior to other methods of adjudication.  Rule 23(b)(3)(A)-(D).  The first factor considers the interest of each member in "individually controlling the prosecution or defense of separate actions."   Rule 23(b)(3)(A).  This factor weighs against class certification where each class member has suffered sizeable damages or has an emotional stake in the litigation.  *See, e.g., In re N. Dist. of Cal., Dalkon Shield, Etc.*, 693 F.2d 847, 856 (9th Cir. 1982), *abrogated on other grounds in Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996).  In this case, where monetary damages that each Class Member suffered individually are relatively modest, certifying a class action is favored.  *Id.*

The second factor to consider is "the extent and nature of any litigation concerning the controversy already begun by or against members of the class."  Fed. R. Civ. P. 23(b)(3)(B).  The only known litigation concerning the controversy is the case at issue in this settlement; thus this factor favors certification.

The third Rule 23(b)(3) factor is "the desirability or undesirability of concentrating the litigation of the claims in the particular forum" (Fed. R. Civ. P. 23(b)(3)(C)), and the fourth factor is "the likely difficulties in managing a class action" (Fed. R. Civ. P. 23(b)(3)(D)).  The fourth factor "encompasses the whole range of practical problems that may render the class format inappropriate for a particular suit."  *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 164 (1974).  In the context of settlement, however, the third and fourth factors are rendered moot and are not relevant.  *See Amchem*, 521 U.S. at 620 (where a district court is confronted with a settlement-only class certification, the court need not inquire whether the case, if tried, would present manageability problems because the point is that there will be no trial).

"Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be the superior method for managing litigation if no realistic alternative exists."  *Valentino*, 97 F.3d at 1234.  The potential recovery by any individual plaintiff

is relatively small and thus individual members of the classes would likely be unwilling or unable to institute separate suits, and the filing of individual suits by 3,327 separate plaintiffs would create an unnecessary burden on judicial resources. In sum, the Rule 23(b)(3) predominance and superiority requirements are satisfied.

### c.    Conclusion

For the reasons set forth above, the Settlement Classes here meet the class-certification requirements of Rules 23(a) and 23(b)(3).

### 3.    The Proposed Settlement is Fair, Reasonable, and Adequate

Settlements are afforded a presumption of fairness if (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected. 4 William B. Rubenstein, Alba Conte, & Herbert B. Newberg, *Newberg on Class Actions* § 11.41 (4th ed. West 2011). Here, the parties' Settlement Agreement was reached through the efforts of counsel in mediation with the assistance of a mediator who has experience handling wage-and-hour class-action disputes. Thus, the parties' settlement is entitled to a presumption of fairness.

A settlement may be approved only after a hearing and on a finding that it is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(1)(C). Such approval is required to ensure that any settlement reached is consistent with the plaintiff's fiduciary obligations to the class. *See Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 996 (9th Cir. 1985). The court also serves as guardian for the absent class members who will be bound by the settlement, and therefore must independently determine the fairness of any settlement. *Id.* However, the court's role in intruding upon what is otherwise a private consensual agreement is limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or collusion between the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned. *FDIC v. Alshuler (In re Imperial Corp. of Am.)*, 92 F.3d 1503, 1506 n.5 (9th Cir. 1996). Therefore, the settlement hearing is not meant to be conducted as a trial or rehearsal for trial on the merits. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

In determining whether a proposed settlement is "fair, reasonable, and adequate" pursuant to Rule 23(e), courts may consider factors including (1) the strength of the case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the settlement amount; (5) the extent of discovery completed and the stage of the proceedings; (6) whether the class has been fairly and adequately represented during the settlement negotiations; and (7) the reaction of the class to the proposed settlement. *See Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Chrysler Corp.*, 150 F.3d at 1026).

### a.    The Strength of Plaintiff's Case

The initial fairness factor addresses Plaintiff's likelihood of success on the merits and the range of possible recovery. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 964-65 (9th Cir. 2009). In determining the probability of the plaintiff's success on the merits, there is no "particular formula by which that outcome must be tested." *Id.* at 965. Instead, the court's assessment is based on "nothing more than an 'amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice*, 688 F.2d at 625 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 468 (2d Cir. 1974)). The court is not required to "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of the outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Id.* Rather, the court may presume that, through negotiation, the parties, their counsel, and the mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery. *See Rodriguez*, 563 F.3d at 965 ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution . . . ").

Plaintiff acknowledges that it was forced "to discount David's Bridal's potential liability by the risks associated with certifying a claim for meal break violations," particularly because of the pendency of *Brinker Rest. Corp. v. Super. Ct.*, 165 Cal. App. 4th 25, 31 (2008) before the California Supreme Court. (Doc. 48, 19:18-20:5.) In *Brinker*, the Supreme Court considered whether California law requires an employer to ensure meal breaks are taken or whether an employer need

only provide a meal break.  This unsettled area of California law potentially diminished Plaintiff's possible recovery with respect to the meal break claim.[7]

Further, Plaintiff indicates that Defendant began automatically paying meal period premiums in November 2008; since 2008, Defendant has paid over 10,500 meal period premiums to putative class members and continues to automatically pay meal period premiums.  (Doc. 48, 20:5-12.)

Plaintiff's rest-break claim rested on a similar theory of liability as the meal-break claim, but because employers have no obligation to record rest breaks, the relative lack of written proof as to this claim diminished the prospect of certifying that claim and the value of the claim was significantly discounted.  (Doc. 48, 20:13-20.)

Therefore, although Plaintiff maintained her strong belief in the underlying merits of the case, Plaintiff's counsel has acknowledged the weaknesses in both the meal and rest-break claims and considered the uncertainties surrounding proving the claims in a lengthy and complex jury trial in negotiating the settlement amount.  As a result, Plaintiff's likelihood of success appears to have been properly accounted for in the settlement amount.  This factor weighs in favor of approval.

> **b.      The Risk, Expense, Complexity, and Likely Duration of Further Litigation**

The risk, expense, complexity, and likely duration of further litigation are factors that consider "the probable costs, in both time and money, of continued litigation."  *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 254 (D.Del. 2002).  Generally, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  *Nat'l Rural Telecomms. Cooperative. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quoting 4 A Conte & H. Newberg, Newberg on Class Actions, § 11:50 at 155 (4th ed. 2002)).  Moreover, settlement is encouraged in class actions where possible.  *See Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly

---

[7] On April 12, 2012, the California Supreme Court issued its decision in *Brinker*, affirming it in part and holding that employers need only provide a meal break, not ensure that it is taken by the employee. *Brinker Rest. Corp. v. Super. Ct.*, 53 Cal. 4th 1004 (2012).

true in class action suits which are now an ever increasing burden to so many federal courts and which present serious problems of management and expense.").

In this case, there remained significant procedural hurdles for the putative class to confront, including certification of the class. Avoiding such unnecessary expenditures of resources and time benefits all the parties and the Court. Moreover, there were significant risks in continued litigation and no guarantee of recovery given the current state of the law due to the pendency of *Brinker*. The settlement, therefore, provides Class Members with another significant benefit that they would not receive if the case proceeded: certain and prompt relief. *See Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974) ("It has been held proper to take the bird in hand instead of a prospective flock in the bush."). This factor weighs in favor of approval.

### c. The Risk of Maintaining Class Action Status Throughout the Trial

A settlement in this case was reached prior to the Supreme Court's recent decision in *Brinker Restaurant Corp. v. Superior Court.* Given the recent decision by the California Supreme Court in that case, class certification for Plaintiff's claim regarding missed meal breaks would be more difficult. *See Brinker*, 53 Cal. 4th at 1040 (holding employer is required to provide a meal period to employees, but "is not obligated to police meal breaks and ensure no work thereafter is performed"). On the other hand, the fact that one claim may not be amenable to class treatment does not necessarily affect the propriety of class certification with respect to other claims of the class or necessarily impact the ability to maintain class-action status throughout trial. *See generally Norris-Wilson v. Delta-T Grp., Inc.*, 270 F.R.D. 596, (S.D. Cal. 2010) (granting class certification find that "[t]he overtime, wage statement, and waiting time claims are suitable for class-wide treatment, but the meal and rest break and reimbursement claims aren't.") Because the Court is not aware of any risks to maintaining class-action status throughout trial, this factor is neutral.

### d. The Settlement Amount

"[S]ettlement is about compromise, a yielding of the highest hopes in exchange for certainty and resolution." *In re Warfarin*, 212 F.R.D. at 257-58. Class counsel negotiated a Maximum Settlement Amount of $518,245 to resolve the claims. The Maximum Settlement Amount includes (1) $166,667 for attorneys' fees and up to $25,000 in costs to be paid to Class Counsel; (2) a $5,000

Class Representative enhancement award; (3) a $7,500 PAGA payment to the California Labor and Workforce Development Agency; and (4) $28,000 in Claims Administration Costs.  The Net Settlement Amount to the Classes is approximately $286,078.00.  Twenty-four percent of the Settlement Classes claimed 41 percent of the Net Settlement Amount.  Predicated on the weeks worked by a particular Class Member during the relevant time period, the average recovery is $198.70 across the Settlement Classes, and the highest recovery is approximately $695.78.  Although a larger award was theoretically possible, "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes."  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal citations and quotation marks omitted).

In light of the claims at issue in this case and the size of the proposed settlement classes, the Court finds that the Settlement Amount appears fair and reasonable and this factor weighs in favor of final approval.

> **e.   The Extent of Discovery Completed and the Stage of the Proceedings**

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair."  *DIRECTV*, 221 F.R.D. at 528.  What is required is that "sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently." 4 William B. Rubenstein, Alba Conte, & Herbert B. Newbert, *Newberg on Class Actions* § 11.41 (4th ed. West 2011).  Here, Plaintiff's counsel expended significant time and resources conducting formal discovery including propounding interrogatories and 276 document requests. (Williams Decl., Doc. 39-1, ¶ 5; Doc. 48, 11:26-12:1.) In response to these discovery requests, Defendant produced, among other things, 4,700 pages of responsive documents as well as the names and contact information of prospective Class Members.  (Williams Decl., Doc. 39-1, ¶ 5, Doc. 48, 12:1-4.)  Class counsel interviewed prospective Class Members and, during the course of mediation, Defendant informally produced class-wide data that enabled Class Counsel to realistically estimate Defendant's exposure. (Williams  Decl., Doc. 39-1, ¶ 6; Doc. 48, 12:5-12.)

As sufficient discovery has been conducted and the matter was settled during arms-length negotiations, this factor weighs in favor of approval.

**f.   Whether the Class Has Been Fairly and Adequately Represented During the Settlement Negotiations**

In considering the adequacy of the terms of a settlement, the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties. *See DIRECTV*, 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation") (internal quotation marks and citations omitted). This reliance is predicated on the fact that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

Here, the experience and view of Class Counsel weigh in favor of approving the Settlement. Class Counsel understood the complex risks and benefits of any settlement and concluded that the proposed Settlement was a just, fair, and certain result. (Williams Decl., Doc. 39-1, ¶ 8.) Moreover, Class Counsel is experienced in this area of law and the settlement was reached after lengthy mediation. This factor weighs in favor of approval.

**g.   The Reaction of the Class to the Proposed Settlement**

Where a settlement agreement enjoys overwhelming support from the class, this lends weight to a finding that the settlement agreement is fair, adequate, and reasonable. *DIRECTV*, 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members"); *see also Boyd v. Cechtle Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979) (finding that objections from only 16 percent of the class was persuasive that the settlement was adequate).

Here, less than two-tenths of one percent of Class Members opted out of the Settlement. The Class Administrator, Simpluris, has received 779 valid Claim Forms, representing approximately 24 percent of the total Class Members identified across the Settlement Classes. Finally, no objection to the Settlement Agreement was received, and no Class Member appeared at the final approval hearing to state any objection. The response of the Settlement Classes was positive, and this weighs in favor of finding that the settlement is favorable to the Class Members.

1          **4.     The Proposed Payment to the Claims Administrator is Reasonable and Should
2                  be Approved**

3          The $28,000 that Plaintiff requests be approved as payment to the Claims Administrator

4  appears fair and reasonable.  The fee requested here is consistent with other Claims Administration

5  fees in similar class-action settlements, particularly in light of the number of Notice Packets that the

6  Claims Administrator was required to process.  *See, e.g., Harris v. Vector Marketing Corp.*, 2012

7  WL 381202, at * (N.D. Cal. Feb. 6, 2012) (awarding $250,000 in administration costs where claims

8  administrator sent out 68,487 notices).  The Court finds the requested Claims Administration fee to

9  be reasonable and recommends that it be approved and awarded.

10         **5.     The Proposed PAGA Payment is Reasonable and Should be Approved**

11         A settlement reached between the parties on a PAGA claim is subject to court review and

12  approval.  Cal. Lab. Code § 2699(l).  Pursuant to the Settlement Agreement, the parties have agreed

13  to pay $7,500 to the California Labor and Workforce Development Agency ("LWDA") from the

14  Maximum Settlement Amount as civil penalties pursuant to the California Labor Code Private

15  Attorneys General Act of 2004, codified at California Labor Code §§ 2699, *et seq.*  This comports

16  with settlement approval of PAGA awards in other cases.  *See, e.g., Chu v. Wells Fargo Investments,*

17  *LLC*, No. C 2011 WL 672645, at * 1 (N.D. Cal. Feb. 16, 2011) (approving PAGA settlement

18  payment of $7,500 to the LWDA out of $6.9 million common-fund settlement).  The Court finds that

19  the PAGA Payment is set at a reasonable amount, and recommends that it be approved.

20         **6.     Conclusion**

21         In sum, as set forth above, the relevant factors weigh in favor of approving the parties'

22  Settlement Agreement.  It represents a substantial recovery that avoids the risks associated with

23  protracted  litigation  in  a  document-intensive  wage-and-hour  case.    It  is  HEREBY

24  RECOMMENDED that the Settlement be APPROVED.

25  **B.     Plaintiff's Motion for Attorneys' Fees and Litigation Expenses Should be Granted**

26         **1.     Payment of Attorneys' Fees in the Amount of $166,667 is Fair and Reasonable**

27         The parties' Settlement Agreement provides that Defendant will pay "33 1/3 percent of the

28  Maximum Settlement Amount for Class Counsel's attorneys' fees, plus costs not to exceed $25,000,

subject to Court approval." (Doc. 39-1, Exh. 1, ¶ 16.)  Defendant further agreed that it would not oppose Class Counsel's application for attorneys' fees and costs up to this amount.[8] (Doc. 39-1, Exh. 1, ¶ 16.)  On March 9, 2012, Plaintiff filed a motion for an award of attorneys' fees and costs in the amount of $166,667.00 and $25,000.00, respectively.  (Doc. 49, 11:5-7.)

Federal Rule of Civil Procedure 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).  In diversity actions such as this, the Ninth Circuit applies state law to determine the right to fees and the method for calculating fees.  *See Mangold v. Cal. Public Util. Comm'n*, 67 F.3d 1470, 1478 (1995); *see also Hartless v. Clorox Co.*, 273 F.R.D. 630, 642 (S.D. Cal. 2011).

The California Supreme Court has held that, "when a number of persons are entitled in common to a specific fund, and an action brought by a plaintiff or plaintiffs for the benefit of all results in the creation or preservation of that fund, such plaintiff or plaintiffs may be awarded attorneys' fees out of the fund." *Serrano v. Priest*, 20 Cal. 3d 25, 34 (1977).  A common fund results when "the activities of the party awarded fees have resulted in the preservation or recovery of a certain or easily calculable sum of money-out of which sum or 'fund' the fees are to be paid." *Id.* at 35.  Here, the structure of the parties' Settlement Agreement creates a Maximum Settlement Amount that constitutes a common fund out of which reasonable attorneys' fees will be paid.

California courts employ two methods when calculating a reasonable award of attorneys' fees in common fund actions.  *See Lealao v. Beneficial Cal., Inc.*, 82 Cal. 4th 19, 26 (2000).  The first calculates attorneys' fees based on a percentage of the benefit bestowed upon the class.  *Id.* ("Percentage fees have traditionally been allowed in such common fund cases, although, as will be

---

[8] A defendant's agreement not to oppose a fee request up to a certain amount as part of a settlement is often referred to as a "clear sailing" provision or clause. *See, e.g., Appollo Grp. Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT, 2012 WL 1378677, at *5 (D.Ariz. Apr. 20, 2012).  Notwithstanding an agreement between the parties related to the payment of attorneys' fees, courts have an independent duty to determine whether the requested attorneys' fees are reasonable. *Bluetooth Headset Prods. Liab. Litig. v. Brennan*, 654 F.3d 935, 941 (9th Cir. 2011).

seen, the lodestar methodology may also be utilized in this context.").[9] The second approach utilizes the lodestar method determined by multiplying the hours counsel reasonably expended by a reasonable hourly rate, which may then be enhanced by a multiplier. *Id.*

A California appellate court has recently evaluated the two differing methods and summarized the law as follows:

> Regardless of whether attorney fees are determined using the lodestar method or awarded based on a "percentage-of-the-benefit" analysis under the common fund doctrine, "[t]he ultimate goal . . . is the award of a 'reasonable' fee to compensate counsel for their efforts, irrespective of the method of calculation . . . It is not an abuse of discretion to choose one method over another as long as the method chosen is applied consistently using percentage figures that accurately reflect the marketplace.

*In re Consumer Privacy Cases* ("*Consumer Privacy*"), 175 Cal. App. 4th 545, 557 (2009).

Under the percentage method, "[e]mpirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery." *Id.* at 558, n. 13 (internal citation and quotation marks omitted). Here, the Settlement Agreement provides that out of the common fund, up to 33 and 1/3 percent will be paid for attorneys' fees. (Doc. 39-1, p. 14:26-28.)

No one set of factors has been prescribed by the California courts to evaluate the reasonableness of the percentage-of-the-benefit requested in common fund settlements; instead, the goal is to assess the reasonableness of the requested fee. *Consumer Privacy*, 175 Cal. App. 4th at 557. To assess reasonableness, Plaintiff cites several California cases that discuss factors in determining a multiplier where fees were calculated under the lodestar method. For example, in *Cundiff v. Verizon California, Inc.*, 167 Cal. App. 4th 718, 724 n. 3, the court noted that a lodestar figure may be adjusted based on various factors including, "(1) the novelty and difficulty of the

---

[9] *But see Dunk v. Ford Motor Co.*, 48 Cal. App. 4th 1794, 1809 (1996) ("The award of attorney fees based on a percentage of a 'common fund' recover is of questionable validity in California."). Although the California Supreme Court recognized the use of a percentage method in common fund cases in *Serrano v. Priest*, 20 Cal. 3d 24 (1977), the *Dunk* court asserted that later cases have cast doubt upon the use of the percentage method to determine attorneys' fees in California Class actions. *Id.* (citing *People ex rel. Dep't of Transp. v. Yuki*, 31 Cal. App. 4th 1754, 1769 (1995), *Salton Bay Marina, Inc. v. Imperial Irrigation Dist.*, 172 Cal. App. 3d 914, 954 (1985), *Jutkowitz v. Bourns, Inc.*, 118 Cal. App. 3d 102, 110 (1981)). Several recent California cases following *Dunk*, however, apply the percentage method of calculation. *See Chavez v. Netflix, Inc.*, 162 Cal. Ap.. 4th 43, 63 (2008); *Apple Computer, Inc. v. Super. Ct.*, 126 Cal. App. 4th 1253, 1270 (2005) (noting that although awards in common fund cases are calculated on percentage, ultimate goal is reasonable fee to compensate counsel); *Bell v. Farmers Ins. Exch.*, 115 Cal. App. 4th 715, 726 (2004).

questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, and (4) the contingent nature of the fee award."

Many of the same factors assessed by California courts in calculating a lodestar multiplier are considered by federal courts in weighing the reasonableness of a percentage-of-the-benefit attorneys' fee award.  The Ninth Circuit has approved consideration of six factors to determine whether the percentage requested is fair and reasonable: (1) the results achieved; (2) the risk of litigation; (3) the skill required; (4) the quality of work performed; (5) the contingent nature of the fee and the financial burden; and (6) the awards made in similar cases. *Vizcalino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Six Mexican Workers v. Az. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990); *In Re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007).  The typical range of acceptable attorneys' fees under this approach in the Ninth Circuit is 20 percent to 33 and 1/3 percent of the total settlement value, with 25 percent considered a benchmark percentage. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).

California courts do not prescribe the 25-percent benchmark that is established under federal law in the Ninth Circuit as a starting point to evaluate fee requests.  *See* 1 Richard M. Pearl, *California Attorney Fee Awards*, §§ 8.12-8.15 (3d ed. 2012).   Nonetheless, the 25-percent benchmark is a helpful assessment tool in evaluating the requested fee award, even where use of the benchmark is not required.  As there is no definitive set of factors that California courts mandate or endorse for determining the reasonableness of attorneys' fees in the context of a common-fund percentage-of-the-benefit approach, the Court considers the reasonableness of the percentage requested in light of the factors endorsed by the Ninth Circuit, with the 25 percent award as a starting point.

### 1.    The Results Achieved

The claims in this case concerning Defendant's alleged failure to pay class members for meal and rest breaks, provided compliant wage statements, or reimburse employees for business expenses are not types of claims that generally produce substantial individual damage awards; thus the

recovery of $518,245 is a favorable result, particularly in light of the pendency of *Brinker* during the settlement negotiations.

Plaintiff notes that Class Members will receive an average of approximately $198.70, with the highest payment to a Class Member being $695.78. Plaintiff contends that this is a substantial recovery where Defendant asserted compelling defenses to liability; Plaintiff also notes several similar actions where the gross recoveries per class member were less than $90, including *Doty v. Costco*, No. 05-cv-03241 (C.D. Cal. May 14, 2007) ($58 average gross recovery); *Sorenson v. PetSmart*, No. 2:06-cv-02674-JAM-DAD (E.D. Cal. Dec. 17, 2008) ($57 average gross recovery). Overall, the Court finds that the results achieved are good, which is highlighted by the fact that there was no objection to the settlement amount or the attorneys' fees requested. *See DIRECTV*, 221 F.R.D. at 529.

### 2.    The Risks Involved

As noted above, there were significant risks involved in this litigation. Specifically, some of the central claims involved the timely provision of rest and meal periods – an issue that was pending before the California Supreme Court at the time this case was settled. Further, Plaintiff notes that Defendant began automatically paying meal period premiums in November 2008 and has paid over 10,500 meal period premiums since that time. (Doc. 48, 20:5-12.) Moreover, as noted above, the rest period claims were similar to those for meal periods. Proof of missed rest periods was complicated by the lack of payroll records, and would have had to be established through declarations, which would have diminished the prospect of certifying that claim. (Doc. 48, 20:13-25.)

As to Plaintiff's claim that Defendant provided employees with non-compliant wage statements, Plaintiff would have been required to show that the failure to provide an accurate paystub caused an employee to suffer injury. There was a risk that Plaintiff would not have been able to establish that Class Members suffered actual injury as a result of non-compliant wage statements. Plaintiff maintains that employers have successfully argued that the "suffering injury" requirement is not satisfied merely by the deprivation of a legal right, and thus Plaintiff would have been required to confront this defense in litigating this claim.

With respect to Defendant's alleged failure to reimburse Class Members for expenses necessarily incurred by employees in the execution of their duties, the claim was generally predicated on the mileage Class Members were required to drive to perform the tasks for Defendant. (Doc. 48, 21:24-22:5.) Defendant claimed that most of the miles driven by Class Members were actually part of those members' return commutes because the banking tasks were performed at the end of the Class Members' shifts, and thus not compensable. Plaintiff and Class Members faced risk that Defendant's argument would undercut the viability of this claim.

As a result, Plaintiff and the Classes faced significant substantive risks in further litigation of these claims.

### 3.    Skill Required and Quality of the Work Performed

The case required specialized skills to litigate the legal theories relating to the wage-and-hour law at issue, particularly in light of the uncertainty of California law as it related to meal breaks. As it related to rest periods, this was challenging in light of the fact that Defendant did not keep records of rest breaks.

Moreover, this case was actively litigated for approximately two years, there was motion practice, and significant discovery was taken. *See generally Navarro v. Servisair*, No. C 08-02716 MHP, 2010 WL 1729538, at *3 (N.D. Cal. Apr. 27, 2010) (finding proposed award of 30 percent of settlement fund unjustifiably departed from benchmark due in part to speed with which parties reached a settlement). Overall, the specialized skill of Class Counsel in this area of the law was generally an asset to the Class Members and the quality of work performed was good.

### 4.    The Contingent Nature of the Representation

Class Counsel litigated the case on a contingency basis, which necessarily presented considerable risk. *See In re Sumitomo Copper Litig*., 74 F. Supp. 2d 393, 396-98 (S.D.N.Y. 1999) ("No one expects a lawyer whose compensation is contingent on the success of his services to charge, when successful, as little as he would charge a client who in advance of the litigation has agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee dependent solely on the reasonable amount of time

expended."). Class Counsel also maintains that the contingent nature of the work was even riskier here because Class Counsel advanced substantial costs that would not be recouped had the litigation been unsuccessful. (Doc. 49, 28:5-6.)

In considering both the contingent nature of the work performed by Class Counsel as well as the risk involved in the costs advanced, these factors support the fee award requested. *See Graham v. Daimler Chrysler Corp.*, 34 Cal. 4th 553, 580 (2004) ("A contingent fee must be higher than a fee for the same legal services paid as they are performed.  The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services.") (internal citations omitted).

**5.     Awards Made in Similar Cases**

Finally, the percentage award requested in this case is commensurate with the percentage-of-the-benefit awards made in other wage-and-hour actions in this district:

(1)     *Bond v. Ferguson Enterprises, Inc.*, No. 1:09-cv-01662-OWW-MJS, Docket No. 59 (E.D. Cal. June 30, 2011) (court approved attorneys' fees in the amount of 30 percent of the common fund)*;*

(2)     *Vasquez v. Coast Valley Roofing*, 266 F.R.D. 482 (E.D. Cal. 2010) (wage-and-hour action putative class-action settlement where court approved award of attorneys' fees in the amount of 33.3 percent of the common fund);

(3)      *Benitez v. Wilbur,* No. 1:08-cv-01122 LJO GSA, Doc. No. 52 (E.D. Cal., Dec. 15, 2009) (awarding 33.3 percent of the benefit to the class in attorneys' fees);

(4)     *Chavez v. Petrissans*, (Case No. 1:08-cv-00122 LJO GSA, Doc. No. 89 (E.D. Cal. Dec. 15, 2009) (court approved awards of attorneys' fees of 33.3 percent of the common fund);

(5)     *Romero v. Producers Dairy Foods, Inc.*, No. 1:05-cv-0484-DLB, 2007 WL 3492841, at * 4 (E.D. Cal. Nov. 14, 2007) (class-action settlement where court approved attorneys' fees in the amount of 33 percent of common fund);

1       (6)    *Vasquez v. Jim Aartman, Inc.*, No. 1:02-cv-05624-AWI-LJO, Doc. No. 130 (class-

2              action settlement where court approved attorneys' fees in the amount of 30 percent

3              of the settlement amount);

4       (7)    *Baganha v. Cal. Milk Transport*, No. 1:01-cv-05729-AWI-LJO, Doc. No. 147 (class-

5              action settlement where court approved attorneys' fees in the amount of 31.25 percent

6              of settlement amount); and

7       (8)    *Randall Willis et al. v. Cal. Western Transport* and *Earl Baron et al. v. Cal Western*

8              *Transport* (consolidated cases), No. 1:00-cv-05695-AWI-LJO (court approved

9              attorneys' fees in the amount of 33.3 percent of the settlement amount).

10     The Settlement Agreement's provision of $166,667 in attorneys' fees (approximately 32.1

11 percent of the total settlement amount), is fair and reasonable in light of the awards of attorneys'

12 fees in similar wage-and-hour cases in this district.

13     **6.**    **The Fee Request is Reasonable**

14     Although Class Counsel's requested fees exceed the 25 percent benchmark under federal law,

15 this diversity case is not governed by federal law. Further, even applying the federal-law benchmark,

16 the Court finds sufficient reasons to exceed that marker considering the risks of litigation, the

17 contingent nature of the work, the favorable reaction of the class, and the fee awards in other wage-

18 and-hour cases. As discussed below, the requested fee is far smaller than the lodestar calculation,

19 even where the hourly rates requested by counsel are reduced to account for attorney hourly rates

20 charged in the local community. *See Vasquez*, 266 F.R.D. at 491 (approving attorneys' fees award

21 of 33 1/3 of the settlement fund and noting it was "significantly less" than the asserted lodestar).

22 Reducing the award to 25 percent of the class recovery would not adequately compensate counsel

23 and would essentially result in an unreasonably low award of attorneys' fees, particularly in light of

24 the lodestar cross-check.

25     Based on the risks faced in the litigation, the contingent nature of the work performed, the

26 reaction of the class, and awards in other wage-and-hour cases, the Court concludes there are

27 sufficient reasons to depart upward from the benchmark even if this case were governed by federal

28

law.  In any event, under both California and federal standards for assessing fee awards, the requested 32.1 percent of the class recovery represents a reasonable fee award and should be approved.  *See Ozga v. U.S. Remodelers, Inc.*, No. C 09-05112 JSW, 2010 WL 3186971, at * 3 (N.D. Cal. Aug. 9, 2010) (departure from benchmark warranted due to excellent results, reaction of the class, the risks faced due to the uncertainty of California law in similar wage-and-hour cases).

### 3.   Cross-Check of Percentage Request with Lodestar Calculation Indicates Fee Award is Reasonable

Courts frequently cross-check a percentage fee request with the lodestar analysis.  *See, e.g., Sutter Health Uninsured Pricing Cases*, 171 Cal. App. 4th 495, 512 (2009) (cross-checking percentage-based award by noting that multiplier of 2.52 is "fair and reasonable").

"In conducting a lodestar cross-check, the court must first determine the dollar value of the proposed percentage-based fee award."  *In re Portal Software, Inc. Sec. Litig.* ("*Portal Software*"), No. C-03-5138-VRW, 2007 WL 4171201, at *14 (N.D. Cal. Nov. 26, 2007).  The requested award here is $166,667.00, which represents a requested fee of 32.1 percent of the $518,245.00 Settlement Amount.  The next step is to cross-check the proposed percentage fee against the lodestar.  *Id.* "Three figures are salient in a lodestar calculation: (1) counsel's reasonable hours, (2) counsel's reasonable hourly rate and (3) a multiplier thought to compensate for various factors (including unusual skill or experience of counsel, or the ex ante risk of nonrecovery in the litigation)."  *In re HPL Tech., Inc. Sec. Litig.* ("*HPL Tech.*"), 366 F. Supp. 2d 912, 919 (N.D. Cal. 2005).

The multiplier is calculated from the ratio of the proposed percentage fee to the computed lodestar fee and is assessed for reasonableness.  *Portal Software*, 2007 WL 4171201, at *14.  Where the use of the lodestar method is used as a cross-check to the percentage method, it can be performed with a less exhaustive cataloguing and review of counsel's hours.  *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005) ("The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting."); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166 (S.D. Cal. 2007) ("Although counsel have not provided a detailed cataloging of hours spent, the Court finds the information provided to be sufficient for purposes of lodestar cross-check.");

*Sutter Health Uninsured Pricing Cases*, 171 Cal. App. 4th 495, 512 (2009) (where lodestar used to cross-check percentage approach, documentation of the lodestar figure is often submitted in summary or declaration form, without submission of full time records).

Here, Class Counsel's asserted lodestar totals $275,404.50.  By declaration, Class Counsel indicates the following rates, hours, and fees of each attorney who performed work on the litigation:

| Schedule of Fees | | | | |
|---|---|---|---|---|
| **Attorney** | **Title** | **Hourly Rate** | **Hours Worked** | **Total Fees Requested** |
| Arthur Meneses | Partner | $695 | 30.7 | $21,337 |
| Mark Estrella | Former Senior Counsel | $655 | 60.8 | $39,824 |
| Gene Williams | Senior Counsel | $590 | 61.8 | $36,462 |
| David Medby | Former Senior Counsel | $520 | 22.3 | $11,596 |
| Jamie Greene | Associate | $420 | 47.5 | $19,950 |
| Eduardo Santos | Associate | $420 | 112.8 | $47,376 |
| Liana Beneli | Associate | $395 | 25.1 | $9,915 |
| Sue Kim | Associate | $395 | 174.3 | $68,849 |
| Alexandria Witte | Associate | $330 | 14.2 | $4,686 |
| Carla Topdjian | Associate | $330 | 46.7 | $15,411 |
| **Total** | | | **596.2** | **$275,406** |

(Meneses Decl., Doc. 50, ¶ 9.)[10]

The Court finds the 596.2 hours expended on the litigation to be reasonable in light of law and motion practice with respect to subject matter jurisdiction, the amount of discovery conducted, the number of Defendant's employees included in the Settlement Classes, and the mediation preparation required.  The Court notes that in *Alvarado v. Nederend*, No. 1:08-cv-01099-OWW-

---

[10] The figures in the table were rounded up or down to the nearest dollar by Class Counsel, and thus, the total reflects this rounding.

1    DLB, 2011 WL 1883188, at * 8 n.2 (E.D. Cal. May 17, 2011), counsel expended approximately 308

2    hours reaching a settlement in a wage-and-hour class action involving issues related to meal and rest

3    breaks with approximately 150 class members.  Class membership here is significantly larger than

4    that in *Alvarado* and arguably entailed review of a larger amount of discovery.  The Court finds no

5    reason to reduce the number of hours set forth in counsel's lodestar calculations.

6           As it relates to Class Counsel's requested hourly rates, in *Bond v. Ferguson Enterprises, Inc.*,

7    No. 1:09-cv-01662-OWW-MSJ, 2011 WL 2648879, at *11-13 (E.D. Cal. Jun. 30, 2011), the court

8    recently considered a motion for attorneys' fees in the context of finally approving a wage-and-hour

9    class action settlement.  In performing a lodestar cross-check of the class counsel's fee request, the

10   court noted that "[p]revailing hourly rates in the Eastern District of California are in the $400/hour

11   range." *Id.* at *12.  The court then compared the requested rates to those prescribed under the Laffey

12   Matrix, a widely recognized compilation of attorney and paralegal rates used in the District of

13   Columbia, and frequently used in determining fee awards. *Id.*  In comparison to the Laffey Matrix

14   rates, adjusted for cost of living, the hourly rates requested by the class counsel in *Bond* were

15   approximately 10 percent higher.  The court determined that a 10 percent "haircut" to class counsel's

16   requested rates was justified.  Thus, for example, a requested hourly rate of $750 for a partner with

17   more than 20 years of experience was adjusted to $675 per hour.  A requested hourly rate of $290

18   for an associate with two years of experience was adjusted to $261 per hour.[11]

19          In this case, a similar reduction should be applied to account for hourly rates in the relevant

20   community.  While Class Counsel cites numerous cases where their requested hourly rates have been

21   approved, none of these cases is from the Fresno division of the Eastern District, which is the

22   relevant community for purposes of the fee motion.  *Nichols v. City of Taft*, 155 Cal. App. 4th 1233,

23   1242-43 (2007) ("The lodestar figure is calculated using the reasonable rate for comparable legal

24   services in the *local community* for noncontingent litigation of the same type, multiplied by the

25

26   _____

27   [11] The version of the court's order in *Bond* that is published electronically on Westlaw contains a formatting
     error such that the entire text of the order does not appear on the electronic Westlaw publication.  The complete order
     is located on the court's electronic docket at number 59 in case 1:09-cv-01662-OWW-MSJ.

28

reasonable number of hours spent on the case.")  The hourly rates requested by Class Counsel are similar to those requested in *Bond* and should be reduced.  Moreover, because the declaration filed to support the requested rates does not specify the numbers of years each attorney has been practicing in this area of law, or practicing law in general, a larger across-the-board reduction is warranted.  For these reasons, reducing the requested hourly rates by 20 percent is a reasonable "haircut" that accounts for the rates in this forum.  This adjustment is as follows:

| Schedule of Fees | | | | | |
|---|---|---|---|---|---|
| **Attorney** | **Title** | **Hourly Rate** | **Adjusted Hourly Rate** | **Hours Worked** | **Total Fees** |
| Arthur Meneses | Partner | $695 | $556 | 30.7 | $17,069 |
| Mark Estrella | Former Senior Counsel | $655 | $524 | 60.8 | $31,859 |
| Gene Williams | Senior Counsel | $590 | $472 | 61.8 | $29,170 |
| David Medby | Former Senior Counsel | $520 | $416 | 22.3 | $9,277 |
| Jamie Greene | Associate | $420 | $336 | 47.5 | $15,960 |
| Eduardo Santos | Associate | $420 | $336 | 112.8 | $37,901 |
| Liana Beneli | Associate | $395 | $316 | 25.1 | $7,932 |
| Sue Kim | Associate | $395 | $316 | 174.3 | $55,079 |
| Alexandria Witte | Associate | $330 | $264 | 14.2 | $3,749 |
| Carla Topdjian | Associate | $330 | $264 | 46.7 | $12,329 |
| **Total** | | | | **596.2** | **$220,325** |

The resulting lodestar amounts to $220,325 for 596.2 hours expended, which equates to an across-the-board billing rate of $369.54 per hour for attorney time, without consideration of the attorneys' years of experience.  The adjusted rates range from $264 to $556 per hour to account for the

respective attorney's greater experience and position within Class Counsel's firm.[12]  This comports

generally with the observation by the Court in *Bond* that the prevailing rates in the Eastern District

are in the range of $400 per hour for attorney work, and is consistent with the $225 to $675 range

of hourly rates awarded in *Bond*.  Where the lodestar is utilized as a cross-check, such a "rough

calculation" is appropriate.  *Bond*, 2011 WL 2648879, at * 12 ("Because the lodestar is being used

here as a cross-check, the court may use a 'rough calculation of the lodestar.'" (quoting *Fernandez

v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM, 2008 WL 8150856, at * 9 (C.D. Cal. July

21, 2008) (courts "generally also use a rough calculation of the lodestar as a cross-check to assess

the reasonableness of the percentage award"))).

Notwithstanding this reduction in hourly rates, however, the resulting lodestar ($220,325)

is still greater than the percentage fee award counsel requests ($166,667).  This results in an implied

multiplier of 0.76 ($166,667 / $220,325), i.e., a negative multiplier.  An implied negative multiplier

supports the reasonableness of the percentage fee request.  *See, e.g.*, *Portal Software*, 2007 WL

4171201, at *16 (resulting negative multiplier under lodestar cross-check analysis "suggest[ed] that

the percentage-based amount is reasonable and fair based on the time and effort expended by class

counsel").  The lodestar cross-check confirms the reasonableness of the percentage-fee requested by

Class Counsel.

Based on the factors weighed in considering the award under the percentage method and the

lodestar cross-check method, the requested award of fees is reasonable and the Court

RECOMMENDS that Class Counsel's request for attorneys' fees be GRANTED.

## C. Plaintiff's Motion for the Award of an Enhancement to the Class Representative Should be Granted

Plaintiff seeks an enhancement award in the amount of $5,000 for Class Representative

Estella Schiller.  This payment is intended to recognize the time and efforts Ms. Schiller spent for

the benefit of Class Members, as well as the additional risk Ms. Schiller undertook.

---

[12] The Court was able to ascertain the number of years each attorney performing work on the case has been admitted to practice law in California through the records maintained by the State Bar of California located at https://www.calbar.ca.gov.

An enhancement award paid to a class representative must be assessed by the court because "[i]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *Staton*, 327 F.3d at 975 (quoting *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 720 (E.D.N.Y. 1989) (internal quotation marks omitted)). Thus, in considering an enhancement award to a class representative, a court should weigh all "relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation[,] . . . and reasonable fears of workplace retaliation." *Staton*, 327 F.3d at 977 (internal quotation marks and citation omitted).

In this case, the Class Representative assisted in the prosecution and settlement of the Class' claims by (1) reviewing her own personal employment records to select documents she believed would assist Class Counsel in litigating the case; (2) spending time assisting Class Counsel with discovery; (3) assisting with settlement negotiations, and (4) spending time evaluating the settlement. (Schiller Decl., Doc. 51, ¶¶ 8-11.) Plaintiff estimates that she spent approximately 25 to 30 hours assisting Class Counsel in the prosecution of the case. (Schiller Decl., Doc. 51, ¶ 13.) Further, Plaintiff agreed to execute a general release of claims which is broader than the release signed by the other Class Members. (Schiller Decl., Doc. 51, ¶ 12.) Plaintiff, as Class Representative, undertook a financial risk that, in the event of a judgment in favor of Defendant, she may have been personally responsible for any costs awarded in favor of Defendant. *See, e.g., Whiteway v. FedEx Kinkos Office & Print Servs., Inc.*, No C 05-2320 SBA, 2007 WL 4531783, at * 2-*4 (N.D. Cal. Dec. 17, 2007). Additionally, there has been no objection to the Class Representative enhancement award.

Finally, the amount requested is consistent with other incentive awards in this Circuit. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (approving $5,000 to two plaintiff representatives of 5,400 potential class members in a $1.75 million settlement); *Chu v. Wells Fargo Investments, LLC*, 2011 WL 672645, at * 5 (N.D. Cal. Feb. 16, 2011) (awarding $10,000 to two plaintiff representatives involved in case for five years and $4,000 to three

representative plaintiffs participating in case for two years, from a $6.9 million settlement fund); *Hopson v. Hanesbrands, Inc.*, No. 08-cv-0844 EDL, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009) (approving $5,000 award to one member of 217-member class from $408,420 settlement amount); *Glass v. UBS Fin. Servs.*, No. C-06-4068 MMC, 2007 WL 221862, at *16-17 (N.D. Cal. Jan. 26, 2007) (approving $25,000 award to each of four plaintiff representatives of 13, 176-member class from $45 million settlement amount).

In view of the work the Class Representative has performed on behalf of Class Members, the risk the Class Representative undertook, and the Class Members' response to the Settlement, the requested payment is reasonable and appropriate. The Court RECOMMENDS that Plaintiff's request for a $5,000 Class Representative enhancement award be GRANTED.

## IV. RECOMMENDATION

Based on consideration of the memorandums, declarations, and exhibits filed in support of the present motions, the Court RECOMMENDS as follows:

1.      Plaintiff's Motion for Final Approval of the Class Action Settlement be GRANTED;

2.      Plaintiff's Motion for Attorneys' Fees be GRANTED in the amount of $166,667.00;

3.      Plaintiff's Request for a Class Representative Enhancement Award be GRANTED; in the amount of $5,000 and

4.      Should the district court adopt these findings and recommendations, Plaintiff's proposed order for final approval of the class action settlement filed at Docket No. 59 is recommended for issuance.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within fourteen (14) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C.

§ 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:** __**June 11, 2012**__          _____**/s/ Sheila K. Oberto**_____
                                              UNITED STATES MAGISTRATE JUDGE